# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| DURA GLOBAL TECHNOLOGIES, INC., et al. | |
| Plaintiffs, | CIVIL ACTION NO. 07-cv-10945 |
| vs. | |
| | DISTRICT JUDGE SEAN F. COX |
| MAGNA DONNELLY, CORP., | MAGISTRATE JUDGE MONA K. MAJZOUB |
| Defendant. | |
| _____/ | |

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR A PROTECTIVE ORDER (DOCKET NO. 27)

These matters come before the Court on Defendant's Motion for a Protective Order filed on October 12, 2007. (Docket no. 27). Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion for a Protective Order on October 31, 2007. (Docket no. 35). Plaintiff filed Exhibits C and D to its Brief in Opposition under seal. (Docket nos. 39, 40). Defendant filed a Reply on November 14, 2007. (Docket no. 45). The motion was referred to the undersigned for hearing and determination pursuant to 28 U.S.C. 636(b)(1)(A). (Docket no. 28). The Court conducted a hearing on November 19, 2007. The matter is now ready for ruling.

Plaintiffs bring this action claiming patent infringement and misappropriation of trade secrets. In their Amended Complaint filed July 23, 2007, Plaintiffs allege that Defendant infringed the "617 Patent" entitled "Power Sliding Rear Window" and the "769 Patent" entitled "Motor Vehicle Window Construction With Pull-Pull Cable System." (Docket no. 7). Plaintiffs also allege that Defendant misappropriated trade secrets in violation of M.C.L. § 445.1901 *et seq*. Plaintiffs

describe the trade secrets as "valid and subsisting trade secrets, including, but not limited to, trade secrets relating to our sliding window assemblies for motor vehicles." (Docket no. 7 ¶ 55).

Defendant brings this Motion For a Protective Order pursuant to Fed. R. Civ. P. 26(c) to prevent Plaintiffs from proceeding with discovery of Defendant's technical trade secrets until Plaintiffs sufficiently identify their own trade secrets which they allege Defendant misappropriated. (Docket no. 27). Defendant asks the Court to enter a protective order and: (1) Compel Plaintiffs to provide a list of trade secrets; (2) Preclude Plaintiffs from later supplementing or changing their trade secrets without leave of Court and good cause shown; and (3) Temporarily preclude Plaintiffs' discovery of Defendant's technical trade secret and confidential information until Plaintiffs provide a proper trade secret list. (Docket no. 27). Defendant states that it does not seek to suspend discovery in its entirety, but only that portion which implicates its trade secrets. (Docket no. 27 at 7).

Defendant's October 12, 2007 Motion for Protective Order was filed in the middle of a series of stipulations and orders entered in this matter. On October 2, 2007 the parties entered into a stipulated protective order allowing material to be designated "Confidential" and filed under seal. (Docket no. 22). It provides that material designated as confidential may be disclosed only to outside counsel appearing of record and its employees, one in-house counsel appearing of record, court personnel, authors, addressees and recipients of the material, independent consultants or experts who agree to be bound by the terms of the protective order, and other persons designated by written agreement of the parties or by order of the Court. (Docket no. 22 at 3).

On October 10, 2007 the parties filed with the Court a stipulation providing that "Dura and Magna each will serve its interrogatory answers by October 15, 2007. Dura will take the deposition,

and Magna will produce Paul Eichenberg for deposition by November 7, 2007." (Docket no. 26).
The Court entered the stipulation as an Order on October 30, 2007. (Docket no. 26). Plaintiffs and Defendant served their answers on October 15, 2007 pursuant to the stipulation and Mr. Eichenberg's deposition was conducted on November 5, 2007[1].

## 1. *Plaintiffs Must Identify Their Trade Secrets With Reasonable Particularity*

Defendant claims that Plaintiffs failed to sufficiently identify the trade secrets they allege were misappropriated by Defendant prior to seeking discovery of Defendant's trade secrets. Defendant cites Plaintiffs' Interrogatory Nos. 1 and 2 and Request No. 2 as examples of Plaintiffs seeking trade secrets. Interrogatory Nos. 1 and 2 and Request No. 2 seek information relating to "each Donnelly Power Slider Product." Defendant alleges that Plaintiffs seek trade secret information when they ask Defendant to (a) 'describe with particularity' the costing, design, development and manufacture of each Donnelly Power Slider Product; (b) provide documents showing the 'costing, structure, materials, manufacture, operation, validation, PAPP, and function' of each commercial version of the Donnelly Power Slider Products; and (c) noticing the deposition of a former employee of Dura who now works for Magna Donnelly. (Docket no. 27 at 3-4).

Plaintiffs brought their claim for misappropriation of trade secrets under Michigan's Uniform Trade Secret Act, M.C.L. § 445.1901 et seq. ("MUTSA"). In an action under MUTSA, "a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings." M.C.L. § 445.1906. MUTSA

---

[1]Plaintiffs' assertion that Defendant's Motion is in effect a motion for reconsideration of the October 30, 2007 Order is not persuasive for the reasons set forth below. Furthermore, Defendant served answers and objections pursuant to the stipulation and moved for a protective order regarding issues not addressed in the October 30, 2007 Order.

is consistent with the federal rules of civil procedure under which the Court has the authority to issue a protective order regarding the discovery of trade secrets or other confidential information. Fed. R. Civ. P. 26(c)(7). Fed. R. Civ. P. 26(c) authorizes the Court to make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Broad discretion is afforded to the Court in regulating discovery. *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991).

"Determining whether a trade secret has been misappropriated usually involves examining things that the other party considers its own trade secrets. There is no privilege excepting trade secrets from discovery, but 'courts must exercise discretion to avoid unnecessary disclosures of such information.'" *See Automed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 925 (N.D. Ill. 2001) (citing *Triangle Ink and Color Co. v. Sherwin-Williams Co.*, 61 F.R.D. 634, 636 (N.D. Ill. 1974). "[P]laintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets." *Automed Techs.*, 160 F. Supp. 2d at 926 *(citing Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986)). "[D]isclosure of plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discovery." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D.C. Del. 1991) (Court granted defendant's motion for protective order to allow defendant to conduct discovery of plaintiff to inquire into the details of plaintiff's trade secrets prior to plaintiff proceeding with discovery of defendant.); *see also Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598 (1999) (The pretrial scheduling order required

plaintiff to provide "a list of its trade secrets upon which its allegations are based." *Id.* at 599. The Court found that "adequate discovery cannot be conducted in the absence of the specific disclosure which is required by this Order." *Id.* at 600. "Ordering the list of trade secrets at the outset of the litigation is a common requirement." *Id.*).

Defendant relies on *Compuware Corp. v. Int'l Bus. Machs.*, No. 02-70906, 2003 WL 23212863 (E.D. Mich. Dec. 19, 2003) for its assertion that a "party alleging trade secret misappropriation must particularize and identify the purportedly misappropriated trade secrets with specificity." *Id.* at *6. *Compuware Corp.* addressed a motion for preliminary injunction, not discovery issues, and the court determined that plaintiff failed to show the clear likelihood of success on the merits necessary for a preliminary injunction to issue. *Id.* at *7. The reasonable particularity standard set forth in *Automed,* above*,* arose in the context of discovery.

Plaintiffs argue that a 2002 *Compuware Corp.* case is controlling. *See Compuware Corp. v. Int'l Bus. Machs.*, 259 F. Supp. 2d 597 (E.D. Mich. 2002). In the 2002 *Compuware Corp.* case the Court denied defendant's motion for a more definite statement as to plaintiff's claim for misappropriation of trade secrets. The Court noted that "in order to prove a claim for misappropriation of trade secrets, Michigan courts have found that an alleged trade secret must be identified 'clearly, unambiguously, and with specificity.'" *Id.* at 605. The Court held that while plaintiff had not identified the trade secrets "'clearly, unambiguously, and with specificity,' such is not necessary at the pleading stage" and plaintiff's allegations gave adequate notice of its cause of action. *Id.* "Any further specificity desired by [defendant] can be achieved through discovery." *Id.* A Court order allowing Defendant to proceed with discovery as to Plaintiffs' trade secrets prior to

providing its own trade secret information in an attempt to achieve such specificity is not inconsistent with the 2002 *Compuware Corp.* holding.

Plaintiffs also rely on *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398 (6th Cir. 2006), for the premise that a plaintiff does not have to identify each element of a trade secret with specificity so as to separate that element from every other element. However, *Mike's Train House* examined the issue of whether, when a combination or compilation of information, steps or processes comprises a "trade secret" containing both secret and non-secret material or information, the plaintiff must identify which components of the protected material are secret. *Id.* at 411. *Mike's Train House* used examples such as design drawings and manuals, which may contain characteristics which by themselves are each in the public domain, but together comprise a trade secret. Under *Mike's Train House*, a plaintiff is not required to dissect a design drawing it alleges is a trade secret into "private" and "public" elements. However *Mike's Train House* does not stand for the premise that a plaintiff need not identify the material, compilation or information that it claims is the trade secret.

In their Amended Complaint Plaintiffs did not plead the alleged misappropriated trade secrets with the reasonable particularity necessary to determine relevancy with regard to the discovery Plaintiffs seek from Defendant. Plaintiffs describe the trade secrets allegedly misappropriated by Defendant only as "valid and subsisting trade secrets, including, but not limited to, trade secrets relating to our sliding window assemblies for motor vehicles" and reference the "617 Patent" entitled "Power Sliding Rear Window" and the "769 Patent" entitled "Motor Vehicle Window Construction With Pull-Pull Cable System" with respect to their claims for patent infringement. (Docket no. 7 ¶¶ 9, 11, 32, 34, 55).

The only set of Defendant's interrogatories and Plaintiffs' answers which appear in the record is designated "Confidential," filed under seal and appears at Docket no. 35 Exhibit C. (Docket nos. 35, 39). Therefore, neither Defendant's Interrogatories nor Plaintiffs' Answers will be reproduced herein and they will be summarized only to the extent that the summaries appear in the parties' briefs not under seal and such summary is consistent with information appearing in the Confidential documents. The Court refers to Docket no. 35 Exhibit C for the full text of Defendant's Interrogatories and Plaintiffs' Answers.

In their Response Brief, Plaintiffs argue that they identified a list of trade secrets with specificity in their Responses to Defendant's First Set of Interrogatories served on October 15, 2007 and filed with the Court under seal at Exhibit C to Plaintiffs' Response Brief. (Docket no. 35-2 at 6). Plaintiffs' purported trade secret list was provided in its answer to Defendant's Interrogatory No. 11, which in summary, asks Plaintiffs to identify with particularity its alleged trade secrets. (Docket no. 45 at 2).

Plaintiffs' Response to Interrogatory No. 11 provides a list of general categories and types of information they allege comprise their trade secrets. (Docket no. 35 Ex. C). The Court refers to the remainder of Plaintiffs' Response to Interrogatory No. 11 for its analysis, including Plaintiffs' reference to and provision of over 8500 pages of documents. (Docket no. 35 Ex. C).

Plaintiffs' response to Interrogatory No. 11 does not identify the trade secrets at issue with the particularity necessary for Defendant to identify the information which Plaintiffs claim was misappropriated. *See generally Automed Techs.,* 160 F. Supp. at 925 (General allegations of "software, designs and research" and generic references to three research projects by name are insufficient to identify trade secrets in question.). Plaintiffs' references, even those to control plans,

are too general to specify the trade secrets at issue. Furthermore, it is not Defendant's burden to review over 8500 sheets of paper, among the other information provided, to discern which material constitutes Plaintiffs' trade secrets and further, which of those are the subject of Plaintiffs' claim for misappropriation.

Defendant's Interrogatory No. 12 asks Plaintiffs to provide detail for each alleged misappropriation of a trade secret including when and how the trade secret was misappropriated by Defendant. (Docket no. 45 at 3). Plaintiffs answered with general allegations regarding former employees who now work for Defendant. See Docket no. 35, Exhibit C, Plaintiffs' Response to Interrogatory No. 12 for the remainder of Plaintiffs' answer. Plaintiffs' response provides some specific information, but does not reference a specific trade secret at issue.

Defendant argues that under *Degussa Admixtures, Inc. v. Burnett*, 471 F. Supp. 2d 848 (W.D. Mich. 2007) the Plaintiffs cannot rely on the doctrine of inevitable disclosure to allege only generalized trade secrets and Defendant's employment of Plaintiffs' former employees in pleading a viable cause of action for trade secret misappropriation. The doctrine of inevitable disclosure is, in short, the theory that a former employee will inevitably disclose general, allegedly confidential information. *Id.* at 856. *Degussa Admixtures* noted that "the doctrine has never been adopted in Michigan and, even where it has been discussed, it has only been suggested to be applicable to high executives and key designers of the company's strategic plans and operations." *Id.* at 856.

Plaintiffs deny they are relying on the doctrine of inevitable disclosure. (Docket no. 35-2 at 9). Plaintiffs state that they rely on actual and threatened misappropriation. However, under a concept of either "threatened misappropriation" or inevitable disclosure, a "party must establish

more than the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets." *Id.* at 856 n.4.

Plaintiffs have not specified the trade secrets which they allege Defendant misappropriated with the reasonable particularity required for relevant discovery to take place of Defendant's trade secrets. The Court will grant Defendant's Motion in part and order Plaintiffs to file a particularized trade secret list under seal.

### *2.  Defendant Seeks to Stay Discovery Of Its Technical And Trade Secret Information Until Plaintiffs Identify The Trade Secrets Which They Allege Were Misappropriated.*

Under Fed. R. Civ. P. 33(b)(1), a party shall answer each interrogatory "separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." Defendant objects in part to Interrogatory Nos. 1, 2, 3, 4, 5, 6, 11 and 12 as seeking trade secret information and timely filed a motion for a protective order before the answers were due[2]. Defendant objects to the interrogatories alleging that Plaintiffs failed to identify the alleged misappropriated trade secrets with particularity. Defendant's objections include that the interrogatories are "premature until Dura provides proper patent infringement contentions and identifies its purported trade secrets with particularity, on which it has the burden" and that the interrogatories seek Defendant's trade secrets which are the subject of Defendant's Motion for Protective Order.

Although Plaintiffs in their Response Brief allege that Defendant failed to answer Interrogatory Nos. 2, 4 and 11, there is no motion to compel responses to these interrogatories before

---

[2]Defendant provided answers to Plaintiffs' Interrogatory Nos. 1-5 and 9 under the existing protective order.

the Court, and therefore the issue as to the sufficiency of each answer other than Defendant's objection to providing trade secret information is not being determined herein. The Court will stay the discovery of Defendant's trade secret information sought by Plaintiffs' Interrogatories in accordance with the analysis above until Plaintiffs identify the alleged misappropriated trade secrets with reasonable particularity.

### *3.     Defendant Seeks To Preclude Plaintiffs From Supplementing Or Changing Their Trade Secrets Without Leave Of Court and Good Cause Shown*

Defendant asks the Court to preclude Plaintiffs from later supplementing or changing their trade secret list without leave of Court and showing good cause. The Court has broad discretion in regulating discovery. *Rhodes,* 945 F.2d at 119; Fed. R. Civ. P. 26(c). However, Defendant has provided no legal analysis or authority for granting a protective order precluding Plaintiffs' ability to amend their trade secret list or otherwise effectively amend their pleadings.

The burden of showing good cause for a protective order to issue rests with the party requesting the protective order. *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (1991).

> The party must make a particular request and a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one. . . . The requirement furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts. *Id.* at 412.

Defendant alleges that an order precluding Plaintiffs from amending their trade secret list will prevent *post hoc* tailoring of Plaintiffs' trade secrets to fit Defendant's technology and will "prevent 'moving target' trade secrets." Defendant alleges that "[a]bsent a protective order, Dura may improperly, even if inadvertently, use Magna Donnelly's trade secrets and confidential information to select, define, or describe Dura's trade secrets. Such a situation would seriously prejudice Magna Donnelly and unfairly hamper its defense." (Docket no. 27 at 6).

Defendant has failed to provide this Court facts sufficiently specific to grant Defendant's request for a protective order to preclude Plaintiffs from amending their trade secret list. Furthermore, the harm which Defendant hypothesizes is already addressed by a variety of existing protective measures. First, to the extent the Court will stay discovery of Defendant's trade secrets pending Plaintiffs providing a list of their own allegedly misappropriated trade secrets, Defendant can protect itself from a trade secret fishing expedition by Plaintiffs. Second, there is already a sufficiently restrictive protective order in place. Third, the Federal Rules of Civil Procedure provide for the amending of pleadings once as a matter of course any time before a responsive pleading is served, otherwise *only by leave of the Court or by written consent of the adverse party*. Fed. R. Civ. P. 15(a) (emphasis added). To the extent Plaintiffs wish to amend their pleadings, they will have to do so with Defendant's consent or leave of the Court. To the extent Plaintiffs wish to supplement their pleadings they will need to seek leave under Fed. R. Civ. P. 15(d). In either event, Defendant will have an opportunity to respond.

The Court will deny Defendant's Motion for an order precluding Plaintiffs from supplementing or amending their trade secret list or pleadings regarding the same.

**IT IS THEREFORE ORDERED** that Plaintiffs will file under seal in accordance with the existing protective order a list of the trade secrets that are the subject of its claim for misappropriation of trade secrets by January 10, 2008 and that discovery of Defendant's trade secret information is stayed until January 24, 2008 following Plaintiffs' filing of a list of trade secrets.

**IT IS FURTHER ORDERED** that Defendant's Motion is DENIED to the extent it seeks an order precluding Plaintiffs from supplementing or amending their trade secret list.

## NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).


Dated: December 06, 2007         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE




## PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon Counsel of Record on this date.

Dated: December 06, 2007         s/ Lisa C. Bartlett
                                 Courtroom Deputy