UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURA GLOBAL TECHNOLOGIES,
INC., DURA OPERATING CORP.,

    Plaintiffs,

v.

MAGNA DONNELLY CORPORATION,
a/k/a DONNELLY CORPORATION,

    Defendant.
_____/

Case No. 07-10945

HONORABLE SEAN F. COX
United States District Judge

OPINION & ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS [Doc. No. 175]

Plaintiff Dura Global Technology, Inc. ("Dura") filed this patent infringement, unfair competition, and trade secret misappropriation action on March 5, 2007. The matter is currently before the Court on Defendant Magna Donnelly Corporation's ("Donnelly") FED. R. CIV. P. 12(c) Motion for Judgment on the Pleading on Counts X and XI of Plaintiff's Second Amended Complaint [Doc. No. 175]. The parties have fully briefed the issues, and the Court declines to hear oral argument pursuant to Local Rule 7.1(e)(2)  For the reasons that follow, the Court **DENIES** Donnelly's Motion [Doc. No. 175].

BACKGROUND

Dura filed this action for patent infringement, unfair competition, and trade secret misappropriation against Donnelly on March 5, 2007. Dura supplies door modules, glass systems including integrated modular window assemblies, seat mechanisms, and other engineered assemblies to automotive manufacturers such as General Motors ("GM"). (Pl.'s

1

Amended Complaint, Doc. No. 57, ¶¶ 54).  Dura was the first company to market an OEM power sliding rear window for pickup trucks, *Id*. at ¶ 56, and was awarded two patents by the USPTO related to this product: (1) Patent No. 6,766,617 ("the '617 Patent"), entitled "Power Sliding Rear Window," on July 24, 2004; and (2) Patent No. 5,724,769 ("the '769 Patent"), entitled "Motor Vehicle Construction with Pull-Pull Cable System," on March 10, 1998.  *Id*. at ¶¶ 8, 31.

Mr. Paul Eichenberg ("Eichenberg") began working for Excel Industries, Dura's predecessor corporation, in 1992.  *Id*. at ¶ 56.  Excel and Dura trained Eichenberg in automotive glass technology, and included Eichenberg in Dura's overall business strategies and long-term market strategy.  *Id*.  Among his job duties, Eichenberg was responsible for an earlier bid by Dura on GM's GMT355 series order for a power window assembly system.  *Id*. at  ¶ 57.

Eichenberg was also involved in the creation of the Dura Automotive Systems Windows Engineering Center ("Tech Center"), implemented as one of Dura's long-term strategies to remain competitive in the encapsulated window industry.  *Id*. at  ¶ 59.  With Eichenberg's approval, Dura placed Mr. Denzil Abney ("Abney") in charge of the Tech Center as the Senior Engineering Manager, and Mr. Gary DeGroff ("DeGroff") as the Product Engineering Manager.  *Id*.

In January 2004, GM began the first round of open bidding for its GMT900 rear window, which was to include a power sliding rear window assembly.  *Id*. at ¶ 62.   Eichenberg was involved with Dura's GMT900 bid proposal until March of 2004, when Donnelly hired Eichenberg away from Dura and made him their Director of Business Development and Marketing.  *Id*. at ¶ 63.

When he reviewed Donnelly's GMT900 proposal only a few days into his new job, Eichenberg recommended that Donnelly was ill-prepared to compete for the contract, and should instead concentrate on other bidding proposals. *Id*. The GMT900 contract was originally awarded to a third party competitor, but GM terminated that relationship and reopened the bidding process on the GMT900 in June 2005. *Id*. at ¶ 71.

In the meantime, Donnelly approached Dura in the spring of 2005 about the possibility of a merger or sale between their two companies. *Id*. at ¶ 66. Primary negotiations for the proposed transaction were conducted by Eichenberg on behalf of Donnelly, and Mr. Bob Cicala ("Cicala") for Dura. *Id*. In the course of these negotiations, and under a confidentiality agreement, Dura provided Donnelly with the details of its encapsulated window business process. *Id*. By July of 2005, however, Dura had declined to participate in further merger discussions with Donnelly, and merger negotiations were largely abandoned. *Id*.

At the same time that merger talks were taking place, Dura alleges that Donnelly was inducing critical Dura employees to leave Dura and go to work for Donnelly. *Id*. at ¶ 68. After having Eichenberg meet individually with each potential employee, Donnelly hired Abney, DeGroff, and Cicala, all high-level engineers from Dura who were critical to Dura's GMT900 bid proposal. *Id*. at ¶ 69.

A third-party corporation, identified by Dura as "DRM," did process engineering work for both Dura and Donnelly. Dura alleges that Donnelly induced two employees of DRM who had been previously assigned process engineering work on Dura's encapsulated window systems, Mr. Barry Humphries and Mr. Joe Dressler, to leave their employment with DRM and work for Donnelly. *Id*. at ¶ 70. Mr. Humphries and Mr. Dressler had previously been working

in conjunction with Dura on Dura's GMT900 proposal. *Id*.

Dura alleges that all of these individuals possessed proprietary information about Dura's encapsulated window business, including the details of the '617 and '769 Patents, product planning and marketing, research and development, design testing, and supply chain management, as well as Dura's long-term strategic planning to stay competitive in the industry. *Id*. at ¶¶ 78-81. Dura alleges these individuals used this information at the behest of Donnelly. *Id*. By inducing these five individuals to leave positions working directly for, or in conjunction with, Dura, Donnelly was able to increase their competitive advantage in the GMT900 bidding process while simultaneously decreasing Dura's advantage. *Id*. GM awarded the GMT900 bid to Donnelly on December 12, 2005. *Id*. at ¶ 72.

Dura filed this action against Donnelly on March 5, 2007, alleging the following eleven causes of action:

> Count I:     Infringment of the '617 Patent;
> Count II:    Contributory Infringement of the '617 Patent;
> Count III:   Inducement of Infringement of the '617 Patent;
> Count IV:    Willful Infringement of the '617 Patent;
>
> Count V:     Infringement of the '769 Patent;
> Count VI:    Contributory Infringement of the '769 Patent;
> Count VII:   Inducement of Infringement of the '769 Patent;
> Count VIII:  Willful Infringement of the '769 Patent;
>
> Count IX:    Misappropriation of Trade Secrets;
> Count X:     Common Law Unfair Competition; and
> Count XI:    Intentional Interference with Prospective Economic Advantage.

Donnelly filed several dispositive motions before the Court, including the instant Motion for Judgment on the Pleadings [Doc. No. 175], which attacks Counts X and XI. Donnelly alleges these counts should be dismissed because they are based upon the same alleged actions

by Donnelly which constitute Dura's claim in Count IX, a violation of the Michigan Uniform Trade Secrets Act, M.C.L. § 445.1903 *et seq.* ("MUTSA").

## STANDARD OF REVIEW

In a motion for judgment on the pleadings under FED. R. CIV. P. 12(c), the burden is on the movant to show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. *Larcon Co. v. Wallingsford*, 136 F.Supp. 602, 604-05 (W.D. Ark. 1955), *judgment aff'd*, 237 F.2d 904 (8th Cir. 1956). When considering a motion for judgment on the pleadings, the court must view the facts within the complaint in the light most favorable to the nonmoving party, *Canon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001), but must generally ignore materials outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## ANALYSIS

Counts X and XI of Dura's Complaint allege Michigan state law tort claims for unfair competition and intentional interference with a prospective economic advantage. Donnelly argues that, as Dura relies upon facts alleged in support of Count IX for their claims in Counts X and XI, MUTSA should preempt those latter claims. [Def.'s Br., Doc. No. 175, p.2].

<u>The Michigan Uniform Trade Secrets Act</u>

The Michigan Uniform Trade Secrets Act provides a statutory cause of action and available remedies for the misappropriation of trade secrets. M.C.L. § 445.1903. MUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." M.C.L. § 455.1908(1); *see also CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251 Mich. App. 125, 132 (2002). However, MUTSA explicitly does not displace

5

other potential causes of action not discussed in M.C.L. § 445.1908(1). "This act does not affect any of the following: . . . (b) Other civil remedies that are not based upon misappropriation of a trade secret." M.C.L. § 445.1908(2)(a).

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F.Supp.2d 943 (W.D. Mich. 2003) was the first case to interpret the displacement provisions of MUTSA. *Bliss*, 270 F.Supp.2d at 946. *Bliss* held that courts must "examine whether the claim is based *solely* upon the misappropriation of a trade secret. If so, the claim must be dismissed." *Id*. (emphasis added). However, "[t]o the extent a cause of action exists in the commercial area *not* dependant on trade secrets, that cause continues to exist." *Id*. at 947(emphasis in original). The court in *Bliss* denied summary judgment on claims for tortious interference and unfair competition, holding that those claims were "based upon wrongful conduct independent of the misappropriation of trade secrets" above and beyond their misappropriation claims. *Id*. at 950.

Similarly, in *Wysong Corp. v. M.I. Industries*, 412 F.Supp.2d 612, 623-24 (E.D. Mich. 2005), this Court held that the plaintiff's claims for breach of fiduciary duty were not displaced by MUTSA, "because those claims were not based factually or legally on the misappropriation of secret information." The Court also refused to dismiss unjust enrichment and conspiracy claims which were based on the wrongful taking of Wysong's corporate opportunity *and* the theft of secret information. *Id*.

<u>Dura Global's State Law Tort Claims in Counts X and XI</u>

Dura's factual pleadings in support of Counts X and XI are contained within the allegations of Count IX. However, paragraph 85 of Count X and paragraph 88 of Count XI each specifically state: "Dura repeats and re-alleges each and every allegation contained in the above

6

paragraphs as if fully set forth herein." (Doc. No. 57, ¶¶ 85, 88). Thus, the Court reads the seventeen pages of factual allegations in Count IX as being re-alleged within Counts X and XI. Furthermore, Counts X and XI each specifically state that "Some of the facts alleged above and particularly in Count [IX] clearly set forth" Dura's cases for Counts X and XI, "but were set forth in Count [IX] so as to provide the Court with a clear context of the factual allegations." *Id*. at ¶¶ 87, 89.

Dura's cause of action in Count X is for common-law unfair competition. Michigan follows the general law of unfair competition, *A & M Records, Inc. v. MVC Distributing Corp.*, 574 F.2d 312, 313 (6th Cir. 1978), which prohibits a party from engaging in unfair and unethical trade practices that are harmful to his or her competitors or to the general public. *Clairol, Inc. v. Boston Discount Center of Berkley, Inc.*, 608 F.2d 1114, 1118 (6th Cir. 1979).

Dura's cause of action in Count XI is for common-law intentional interference with a prospective economic advantage. A cause of action under that tort arises under Michigan law upon a showing of: (1) a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of a relationship or expectancy; and (4) damages. *Michigan Podiatric Medical Ass'n v. National Foot Care Program, Inc.*, 175 Mich.App. 723, 735 (1989).

With respect to both of these common-law causes of action, Dura argues that "Donnelly encouraged Dura's employees to leave Dura so that Dura's ability to compete for contracts . . . would be unfairly undermined." [Pl.'s Br., Doc. No. 231, p.7]. As stated in Dura's Complaint:

> These former employees knew Dura's cost during the bidding process. The hiring of Dura's former employees during the second round of bidding [on the GMT900 bid] gave Donnelly an unfair advantage . . . The hiring of the former employees simultaneously bolstered Donnelly's engineering position while simultaneously

increasing the risks associated with Dura's engineering position.

[Plaintiff's Second Amended Complaint, Doc. No. 57, ¶75]. Paragraphs 72-74 lay the groundwork for the statements included above in paragraph 75, and taken together they collectively set out facts that, taken in the light most favorable to Dura, constitute valid causes of action under Counts X and XI. None of this information is "solely based on misappropriation of a trade secret." *Wysong*, 412 F.Supp.2d at 623. Rather, Dura's Complaint contains alleged facts independent of their MUTSA claim that support causes of action for unfair competition and for intentional interference with a prospective economic advantage. As such, Donnelly's Motion for Partial Summary Judgment on Counts X and XI [Doc. No. 175] is **DENIED**.

## CONCLUSION

For reasons explained above, the Court **DENIES** Defendant's Motion for Partial Summary Judgment on Counts X and XI of Plaintiff's Second Amended Complaint [Doc. No. 175].

**IT IS SO ORDERED**.

          S/Sean F. Cox
          Sean F. Cox
          United States District Judge

Dated: September 18, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 18, 2009, by electronic and/or ordinary mail.

          S/Jennifer Hernandez
          Case Manager