UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURA GLOBAL TECHNOLOGIES,
INC., DURA OPERATING CORP.,

    Plaintiffs,

v.

MAGNA DONNELLY CORPORATION,
a/k/a DONNELLY CORPORATION,

    Defendant.
_____/

Case No. 07-10945

HONORABLE SEAN F. COX
United States District Judge

OPINION & ORDER DENYING DEFENDANT'S FIRST MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING U.S. PATENT No. 6,766,617 [Doc. No. 199]

    Plaintiff Dura Global Technologies, Inc. ("Dura") filed this patent infringement, unfair competition, and trade secret misappropriation action on March 5, 2007. The matter is currently before the Court on Defendant Magna Donnelly Corporation's ("Donnelly") First Motion for Partial Summary Judgment Regarding U.S. Patent No. 6,766,617 (the '617 Patent) Based On the Invalidity of Claims 1-3, 5, 8, and 9 Pursuant to 35 U.S.C. § 102(b) [Doc. No. 199]. The parties have fully briefed the issues and the Court declines to hear oral argument pursuant to Local Rule 7.1(e)(2). For the following reasons, the Court **DENIES** Donnelly's Motion [Doc. No. 199].

BACKGROUND

    Dura supplies door modules, glass systems including integrated modular window assemblies, seat mechanisms, and other engineered assemblies to automotive manufacturers such as General Motors ("GM"). Dura was the first company to market an OEM power sliding rear window for pickup trucks, and was awarded two patents by the USPTO related to this product:

1

1) Patent No. 6,766,617 ("the '617 Patent"), entitled "Power Sliding Rear Window," on July 24, 2004; and 2) Patent No. 5,724,769 ("the '769 Patent"), entitled "Motor Vehicle Construction with Pull-Pull Cable System," on March 10, 1998.

Dura filed this action against Donnelly on March 5, 2007, based on federal question jurisdiction. In its Complaint, Dura alleges that Donnelly induced key Dura employees to leave Dura and go to work for Donnelly. Dura also alleges that Donnelly induced these employees to take proprietary information and trade secrets relative to Dura's business with them for Donnelly's own benefit. Dura's Complaint alleges the following eleven causes of action:

>       Count I:      Infringement of the '617 Patent;
>       Count II:     Contributory Infringement of the '617 Patent;
>       Count III:    Inducement of Infringement of the '617 Patent;
>       Count IV:     Willful Infringement of the '617 Patent;
>
>       Count V:      Infringement of the '769 Patent;
>       Count VI:     Contributory Infringement of the '769 Patent;
>       Count VII:    Inducement of Infringement of the '769 Patent;
>       Count VIII:   Willful Infringement of the '769 Patent;
>
>       Count IX:     Misappropriation of Trade Secrets;
>       Count X:      Common Law Unfair Competition; and
>       Count XI:     Intentional Interference with Prospective Economic Advantage.

Counts I through IV allege causes of action which pertain to Dura's power sliding rear window for pickup trucks, alleging that Donnelly's actions infringed upon Dura's '617 Patent. The relevant claims of the '617 Patent are as follows:

> What is claimed is:
>
> 1. A sliding window assembly for a motor vehicle comprising, in combination:
>     a frame member forming a channel having a length, a width, and a height;
>     a guide bracket located at least partially in the channel and slidable along the length of the channel;

> a sliding pane;
> wherein the guide bracket forms a slot receiving an edge of the sliding pane so that the guide bracket carries the sliding pane between a closed position and an open position as the guide bracket and the slot move along the length of the channel;
> a pull-pull cable drive assembly operably secured to the guide bracket to move the sliding pane between the closed and open positions; and
> wherein the frame member forms an interference with the guide bracket to limit movement of the guide bracket in the direction of the height of the channel to limit movement of the guide bracket out of the channel.
> 2. The sliding window assembly according to claim 1, wherein the frame member has a bottom wall and a pair of side walls extending from opposite edges of the side wall to form the channel and opposed flanges inwardly extending from the side walls to form the interference with the guide bracket.
> 3. The sliding window assembly according to claim 2, wherein the guide bracket is at least partially supported by the flanges and sides along the flanges, as the sliding pane is moved between the closed and open positions.
> 5. The sliding window assembly according to claim 1, wherein the sliding panel is secured tot eh [*sic*] guide bracket to substantially prevent relative movement between the sliding pane and the slot.
> 8. The sliding window assembly according to claim 1, further comprising a circumferential frame surrounding the sliding pane and a pair of fixed panes.
> 9. The sliding window assembly according to claim 8, wherein the circumferential frame includes a bottom portion forming a frame channel and the frame member is at least partially located within the frame channel of the bottom portion.

['617 Patent, Def.'s Ex. 1, Doc. No. 199, p.13].

Donnelly has filed several dispositive motions before the Court, one of which is the instant First Motion for Partial Summary Judgment Regarding the '617 Patent [Doc. No. 199]. Donnelly alleges that the claims of the '617 Patent were anticipated as defined under 35 U.S.C. § 102, and as such Dura cannot sustain Counts I through IV for infringement of the '617 Patent.

Donnelly offers two arguments for invalidating claims 1-3, 5, 8 and 9 of the '619 Patent

pursuant to 35 U.S.C. § 102(b): 1) a 1989 Japanese patent anticipates the claims in the '617 Patent; and 2) that Donnelly's own P131 power sliding rear window, offered for sale to Ford Motor Company in July of 2001, constitutes an on-sale bar of Dura's claims in the '617 Patent. If true, either argument would satisfy 35 U.S.C. § 102(b)'s requirement of occurring at least one year prior to August 12, 2001, the date Dura applied for the '617 Patent.

The 1989 Japanese Patent

Donnelly compares the engineering schematics of the '617 Patent with those of Japanese Patent No. Hei 1[1989]-219280 ("the Japanese Reference"), and argues the Japanese Reference anticipates claims 1, 2, and 5 of the '617 Patent. As outlined in the Declaration of Donnelly's Product Development Engineer, Mr. Michael J. Hlust ("Hlust") [Doc. No. 199, Ex. 6], the Japanese Reference anticipates the claims of the '617 Patent in the following ways:

Claim 1
- A sliding window assembly for a motor vehicle comprising, in combination: a frame member forming a channel having a length, a width, and a height (Hlust Decl., ¶8);
- A guide bracket located at least partially within the channel and slidable along the length of the channel (Hlust Decl, ¶9);
- A sliding pane; wherein the guide bracket forms a slot receiving and edge of the sliding pane so that the guide bracket carries the sliding pane between a closed position and an open position as the guide bracket and the slot move along the length of the channel (Hlust Decl., ¶10);
- A pull-pull cable drive assembly operably secured to the guide bracket to move the sliding pane between the closed and open positions; and wherein the frame member forms an interference with the guide bracket to limit movement in the direction of the height of the channel to limit movement of the guide bracket out of the channel. (Hlust Decl., ¶11);

Claim 2
- The sliding window assembly according to claim 1 of the '617 patent, wherein the frame member has a bottom wall and a pair of

4

> side walls extending from opposite edges of the side wall to form the channel and opposed flanges inwardly extending from the side walls to form the interference with the guide bracket. (Hlust Decl., ¶12); and
>
> Claim 5
> - The sliding window assembly according to claim 1 of the '617 patent, wherein the sliding panel is secured to the guide bracket to substantially prevent relative movement between the sliding panel and the slot. (Hlust Decl., ¶13).

Donnelly's 2001 P131 Offer for Sale to Ford Motor Company

Donnelly argues that email correspondence between its own employees and those in Ford's Cost Optimization Group prove that similar technology was offered for sale on July 2, 2001, prior to the critical date of the '617 Patent. [*See* Doc. No. 199, Ex. 4]. Attached to these emails was a document titled "FORD NAOO production purchasing cost summary breakdown," which referenced parts shown in Donnelly's P131 schematics. Donnelly argues these documents prove that the P131 was ready for patenting before the critical date of the '617 Patent.

Donnelly compares the engineering schematics of the '617 Patent with those of the P131 offer for sale, and argues that the P131 offer anticipates claims 1-3, 5, 8 and 9 of the '617 Patent. As outlined in the Hlust Declaration, the P131 offer is alleged to anticipate the claims of the '617 Patent in the following ways:

**Claim 1**
- A sliding window assembly for a motor vehicle comprising, in combination: a frame member forming a channel having a length, a width, and a height (Hlust Decl., ¶8);
- A guide bracket located at least partially within the channel and slidable along the length of the channel (Hlust Decl, ¶9);
- A sliding pane; wherein the guide bracket forms a slot receiving and edge of the sliding pane so that the guide bracket carries the sliding pane between a closed position and an open position as the guide bracket and the slot move along the length of the channel (Hlust Decl., ¶10);

- A pull-pull cable drive assembly operably secured to the guide bracket to move the sliding pane between the closed and open positions; and wherein the frame member forms an interference with the guide bracket to limit movement in the direction of the height of the channel to limit movement of the guide bracket out of the channel. (Hlust Decl., ¶11);

**Claim 2**
- The sliding window assembly according to claim 1 of the '617 patent, wherein the frame member has a bottom wall and a pair of side walls extending from opposite edges of the side wall to form the channel and opposed flanges inwardly extending from the side walls to form the interference with the guide bracket. (Hlust Decl., ¶12);

**Claim 3**
- The sliding window assembly according to claim 2 of the '617 patent, wherein the guide bracket is at least partially supported by the flanges and slides along the flanges as the sliding panel is moved between the closed and open positions. (Hlust Decl., ¶14);

**Claim 5**
- The sliding window assembly according to claim 1 of the '617 patent, wherein the sliding panel is secured to the guide bracket to substantially prevent relative movement between the sliding panel and the slot. (Hlust Decl., ¶13);

**Claim 8**
- The sliding window assembly according to claim 1 of the '617 patent, further comprising a circumferential frame surrounding the sliding pane and a pair of fixed panes. (Hlust Decl., ¶15); and

**Claim 9**
- The sliding window assembly according to claim 8 of the '617 patent, wherein the circumferential frame includes a bottom portion forming a frame channel and the frame member is at least partially located within the frame channel of the bottom portion. (Hlust Decl., ¶16).

Dura argues that fact issues remain with respect to whether the Japanese Reference anticipates the relevant claims of the '617 Patent, and whether Donnelly's P131, as shown in the July 2, 2001 email, anticipates the relevant claims of the '617 Patent. Dura also argues that the

Donnelly's P131 offer for sale to Ford Motor Company does not constitute a commercially reasonable offer.

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c), *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the district court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in its favor. *Matsushita Elec. Inc. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although anticipation under 35 U.S.C. § 102 is normally a question of fact, anticipation issues may be decided on summary judgment if the record reveals no genuine dispute of fact. *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008). A party seeking to establish that particular patent claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence. *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002). Although "not susceptible to precise definition," *Buildex Inc. v. Kason Industries, Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988), clear and convincing evidence has been described as evidence which produces "an abiding conviction that the truth of the factual contentions are highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

## ANALYSIS

Donnelly argues that Dura's '617 Patent should be invalidated for anticipation under 35 U.S.C. § 102(b). It argues that the Japanese Reference anticipates claims 1, 2 and 5 of the '617 Patent, and that their P131 offer for sale to Ford anticipates claims 1-3, 5, 8 and 9 of the '617

Patent. Because genuine issues of material fact remain regarding each of these claims of anticipation, the Court **DENIES** Donnelly's motion [Doc. No. 199].

> I. The Japanese Reference Does Not Clearly And Convincingly Anticipate Claims 1, 2 and 5 of the '617 Patent.

Dura argues that the Japanese Reference does not anticipate claims 1, 2 and 5 "because the Japanese Reference fails to disclose a frame member forming a channel and fails to disclose a pull-pull cable drive assembly and fails to disclose an interference with the guide bracket. . ." [Pl.'s Br., Doc. No. 249, p.1]. Dura also argues that the Japanese Reference is not sufficient to enable one of ordinary skill in the art to have made and used the sliding window in claims 1, 2 and 5 before the August 21, 2001 critical date. *Id*. Finally, Dura argues the Japanese Reference fails to anticipate claim 2 by not disclosing "opposing flanges inwardly extending from the side walls to form an interference with the guide bracket required by claim 2." *Id.* In support of their arguments, Dura attaches the Declaration of William E. Buehler, who in 2007 retired from his position as Movable Glass Senior Engineer for Ford Motor Company. [Buehler Decl., Doc. No. 249, Ex. C].

An invention is anticipated by the prior art if it was "patented or described in a printed publication in this or a foreign country. . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).

The first step in an anticipation analysis is claim construction. *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998). In construing patent claims, the Court looks to "the intrinsic evidence of record - the claims, the specification, and, if in evidence, the prosecution history." *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). If intrinsic evidence resolves all ambiguities, extrinsic evidence is not considered. *Vitronics Corp.*

*v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). A claim analysis "must begin and remain centered on the claim language itself. . . ." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

In this case, there is no dispute regarding the terms of the '617 Patent claim. The plain language of claims 1-3, 5, 8 and 9 of the '617 Patent is clear and unambiguous in their meaning, and their words, cited *supra*, speak for themselves.

The second step in an anticipation analysis involves a comparison of the construed claim to the prior art. *Key Pharms.*, 161 F.3d at 714. To be anticipating, a single prior art reference must disclose "each and every limitation of the claimed invention," "must be enabling," and "must describe the claimed invention sufficiently to have placed it in possession of a person or ordinary skill in the field of the invention." *In re Paulsen*, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994). In comparing a patent's claims to the prior art, "a court may consult artisans of ordinary skill to ascertain their understanding about subject matter disclosed by prior art." *Schering Corporation v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373, 1378 (Fed. Cir. 2003).

In this case, numerous genuine issues of material fact exist regarding anticipation of the claims of the '617 Patent by the Japanese Reference.

The Japanese Reference does not clearly and convincingly anticipate claim 1 of the '617 Patent. Claim 1, on which claims 2, 3, 5, 8 and 9 are dependant, requires "a frame member forming a channel having a length, a width, and a height." ['617 Patent, Def.'s Ex. 1, Doc. No. 199, p.13]. The Japanese Reference, however, discloses "a guide channel formed into a U shape

with an opening top by bending a metal plate." [Japanese Reference, Def.'s Ex. 2 English Translation, Doc. No. 199, p.4].

As Dura's expert states in his declaration, "metal plate" as disclosed in the Japanese Reference does not disclose to one skilled in the art the "frame" required by the patent claims. [Buehler Decl., Pl.'s Ex. C, Doc. No. 249, ¶9].

Donnelly responds by arguing that "the Japanese reference does not disclose a metal plate. The metal plate has been formed into a frame, and the metal has been currently refigured." [Def.'s Reply, Doc. No. 283, p.2]. This argument, however, is not supported by the plain language of the Japanese Reference. At best, fact questions arise whether the "metal plate" in the Japanese Reference can commonly be understood among practitioners of the art to evidence the "frame" taught in claim 1 of the '617 Patent. Such a showing does not clearly and convincingly prove anticipation.

The Japanese Reference also does not clearly and convincingly anticipate claim 1's requirement for a "pull-pull cable drive assembly." The term "pull-pull" does not appear anywhere within the English translation of the Japanese Reference. Further, the Japanese Reference plainly states that "the window panel can slide in such a way that it is *pulled* in the direction of large sliding resistance and *pressed* in the direction of small sliding surface." [Def.'s Ex. 2, English Translation, Doc. No. 199, p.4 (emphasis added)].

Dura argues that the above reference merely discloses a "push-pull cable drive assembly," not the required pull-pull mechanism. [Pl.'s Br., Doc. No. 249, p.14]. It further argues the Japanese Reference's intention for a push-pull drive assembly is supported by the disclosure of "monodirectional clutch 42, which cooperates with a tension device 38 and spring

10

45." *Id.*

Donnelly responds by arguing that Dura "confuse[s] this issue by focusing on symantics of translation issues," and that the mechanism "would not work as a push-pull assembly." [Def.'s Reply, Doc. No. 283, pp.2-3]. Again, this rebuttal does not clearly and convincingly show the absence of a genuine issue of material fact regarding the type of drive mechanism the Japanese Reference discloses.

The Japanese Reference also does not clearly and convincingly anticipate claim 2 of the '617 Patent. Fact issues remain regarding whether the Japanese Reference, which teaches that guide channel 16's "upper end is bent inwards to form flange part 16a," [Def.'s Ex. 2, English Translation, Doc. No. 199, p.4], discloses claim 2 of the '617 Patent's requirement of "opposing flanges inwardly extended from the side walls to form the interference with the guide bracket." ['617 Patent, Def.'s Ex. 1, Doc. No. 199, p.13].

Dura argues that "extending from the side wall" is understood by practitioners as different from "bending a member at the top of the sidewall," due to the ability of the former to "protect the straightness of the flanges." [Pl.'s Br., Doc. No. 249, p.15].

Donnelly rebuts by arguing that claim 2 "merely calls for flanges extending from the side wall - any part of the side wall." [Def.'s Reply, Doc. No. 283, p.3]. This argument, however, does not clearly and convincingly prove that "bending a member at the top" is analogous to "extending from the side wall" for purposes of anticipating claim 2 of the '617 Patent.

In submitting their briefs on this motion, each party attached a declaration from an expert in the field of automotive glass systems. The declaration of Donnelly's expert, Mr. Michael J. Hlust, comes to very different conclusions regarding the anticipation of the '617 Patent by the

11

Japanese Reference than that of Dura's expert, Mr. William E. Buehler.  When presented with expert opinions of otherwise equal force and weight, this Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Matsushita Elec. Inc. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Ultimately, the question of whether the Japanese Reference anticipates the claims of the '617 Patent is one of fact, and therefore the Court **DENIES** Donnelly's motion with respect to the alleged anticipation of the '617 Patent by the Japanese Reference.

## II. Donnelly's P131 Sale to Ford Motor Company Does Not Clearly And Convincingly Anticipate Claims 1-3, 5, 8 and 9 of the '617 Patent.

Donnelly argues that its P131 offer of sale to Ford Motor Company in July of 2001 constitutes an on-sale bar, invalidating the '617 Patent under 35 U.S.C. §102(b).  Dura disputes the validity of the P131 as an on-sale bar to the '617 Patent, arguing that many of Donnelly's drawings and freehand sketches are undated, and further that Donnelly has submitted no evidence that identifies a specific version of the P131 slider that is the subject of the July 2, 2001 email alleged to constitute a sale.  Dura further disputes whether this evidence constitutes an offer for sale consistent with the Uniform Commercial Code.

Under 35 U.S.C. §102(b), a patent is invalid by reason of the on-sale bar if "the invention was. . . on sale in this country. . . more than one year prior to the date of application for the patent in the United States."  35 U.S.C. §102(b).  In *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998), the Supreme Court held that the on-sale bar applies when two conditions are met before the critical date.  First, "the product must be the subject of a commercial offer for sale."  *Id*. at 66.  Second, "the invention must be ready for patenting."  *Id*. at 67.  The Supreme Court explained that the second condition may be satisfied either:

> . . . by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

*Id*.

In this case, Donnelly has not met its burden of proof under the two-pronged test set forth in *Pfaff*. Specifically, Donnelly has not demonstrated that the P131 was the subject of a commercial offer for sale prior to the August 21, 2001 critical date, nor has it demonstrated that the P131 was ready for patenting prior to August 21, 2001.

With respect to a commercial offer for sale, "the offer must meet the level of an offer for sale in the contract sense, one that would be understood as such in the commercial community." *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1046 (Fed. Cir. 2001). "As a general proposition, we will look to the Uniform Commercial Code ["UCC"] to define whether, as in this case, a communication or series of communications rise to the level of a commercial offer for sale." *Id*. at 1047. *Group One* instructs courts to look to the language used by the parties to determine whether an offer was intended:

> In any given circumstance, who is the offeror, and what constitutes a definite offer, requires closely looking at the language of the proposal itself. Language suggesting a legal offer, such as "I offer" or "I promise" can be contrasted with language suggesting more preliminary negotiations, such as "I quote" or "are you interested." Differing phrases are evidence of differing intent, but no one phrase is necessarily controlling.

*Id*. at 1048. While the UCC does not define a "commercial offer for sale," or even an "offer," M.C.L. § 440.1205(2), which mirrors the language in UCC § 1-205(2), instructs this court to take into account the particular circumstances of the usage of trade in the industry, defined as follows:

13

> A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect the transaction in question. The existence and scope of such a usage are to be proved as facts.

M.C.L. § 440.1205(2).

No evidence has been proffered that Donnelly intended the July 2, 2001 email of its employee, Mr. Curt DeJongh, to Ford's Mr. Gautham Parmar to function as an offer for sale. With the exception of an attached cost spreadsheet, the entire text of the email is as follows:

> Included here is the information you requested last week on the P131 power sliding backlite. . . TABS forms are included in the attachment. Please contact me if you have any questions on this information.

[Def.'s Ex. 3, Doc. No. 199, p.MD002747]. Though not in the exact wording referenced in *Group One*, this email's scope is analogous to the "I quote" example *Group One* deemed "language suggesting more preliminary negotiations" than an actual offer. *Group One* at 1048.

The declaration of Dura's expert witness, Mr. William E. Buehler, supports the Court's conclusion that Donnelly's July 2, 2001 email does not constitute an offer for sale:

> [P]arts suppliers work with auto manufacturers and often change features of products over a period of years before a product design is finalized and put into production for sale to an auto manufacturer. Often times successive price quotations are provided that include design concepts that are fluid and not yet finalized. This appears to be exactly what happened with Donnelly's P131 power slider.

[Buehler Decl., Pl.'s Ex. C, Doc. No. 249, ¶23].

Buehler further notes that the eleven pages of drawings attached to Exhibit 4 of Donnelly's Motion, which purport to be "related to the development and offer for sale to Ford of the P131 slider," are dated March 20, 2007, well after the August 21, 2001 critical date. *Id.* at ¶11. Furthermore, these drawings bear a General Motors logo, making it unlikely they were

14

directly involved in the P131 sale in question to Ford. The drawings attached as Exhibit 3 to Donnelly's Motion, while showing an original creation date of May 10, 2001, also show that they have been significantly modified since the purported offer of sale to Ford. HI-LEX drawing E, furthermore, shows a "release for production" date of June 6, 2002, well after the August 21, 2001 critical date. *Id*. at ¶13.

Though it appears that Donnelly and Ford Motor Company engaged in preliminary negotiations regarding the P131 slider before the August 21, 2001 critical date, Donnelly has failed to clearly and convincingly prove that its July 2, 2001 email to Ford constituted a commercially reasonable offer for sale under *Group One*. Further, even if the July 2, 2001 email could be construed as a commercially reasonable offer for sale, HI-LEX drawing E, which shows a "release for production date of June 6, 2002, establishes a genuine issue of material fact regarding whether the P131 was "ready for patenting" at that time. For these reasons, the Court **DENIES** Donnelly's Motion [Doc. No. 199] with respect to the P131 constituting an on-sale bar to the '617 Patent's validity.

## CONCLUSION

For reasons explained above, the Court **DENIES** Donnelly's First Motion for Partial Summary Judgment Regarding U.S. Patent No. 6,766,617 Patent Based on the Invalidity of Claims 1-3, 5, 8 and 9 Under 35 U.S.C. § 102(b) [Doc. No. 199].

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 22, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 22, 2009, by electronic and/or ordinary mail.

                                            s/Jennifer Hernandez
                                            Case Manager