UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURA GLOBAL TECHNOLOGIES,
INC., DURA OPERATING CORP.,

       Plaintiffs,                                Case No. 07-10945

v.                                        HONORABLE SEAN F. COX
                                           United States District Judge

MAGNA DONNELLY CORPORATION,
a/k/a DONNELLY CORPORATION,

       Defendant.
_____/

OPINION & ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OF NONINFRINGMENT OF U.S. PATENT No. 5,724,769 [Doc. No. 201]

       Plaintiff Dura Global Technologies, Inc. ("Dura") filed this patent infringement, unfair

competition, and trade secret misappropriation action on March 5, 2007.  The matter is currently

before the Court on Defendant Magna Donnelly Corporation's ("Donnelly") Motion for

Summary Judgement of Noninfringement of U.S. Patent No. 5,724,769 ("the '769 Patent") [Doc.

No. 201].  The parties have fully briefed the issues, and the Court declines to hear oral argument

pursuant to Local Rule 7.1(e)(2).  For the following reasons, the Court **DENIES** Donnelly's

Motion [Doc. No. 201].

BACKGROUND

       Dura supplies door modules, glass systems including integrated modular window

assemblies, seat mechanisms, and other engineered assemblies to automotive manufacturers such

as General Motors ("GM").  Dura was the first company to market an OEM power sliding rear

window for pickup trucks, and was awarded two patents by the USPTO related to this product: 1)

Patent No. 6,766,617 ("the '617 Patent"), entitled "Power Sliding Rear Window," on July 24, 2004; and 2) Patent No. 5,724,769 ("the '769 Patent"), entitled "Motor Vehicle Construction with Pull-Pull Cable System," on March 10, 1998.

Dura filed this action against Donnelly on March 5, 2007, based on federal question jurisdiction. In its Complaint, Dura alleges that Donnelly induced key employees of Dura to leave Dura and go to work for Donnelly. Dura also alleges that Donnelly induced these employees to take proprietary information and trade secrets relative to Dura's business with them for Donnelly's own benefit. Dura's Complaint alleges the following eleven claims:

Count I:        Infringment of the '617 Patent;
Count II:       Contributory Infringement of the '617 Patent;
Count III:      Inducement of Infringement of the '617 Patent;
Count IV:       Willful Infringement of the '617 Patent;

Count V:        Infringement of the '769 Patent;
Count VI:       Contributory Infringement of the '769 Patent;
Count VII:      Inducement of Infringement of the '769 Patent;
Count VIII:     Willful Infringement of the '769 Patent;

Count IX:       Misappropriation of Trade Secrets [in violation of MI State Law];
Count X:        Common Law Unfair Competition; and
Count XI:       Intentional Interference with Prospective Economic Advantage.

Counts V through VII allege causes of action which pertain to Dura's motor vehicle construction with pull-pull cable system, alleging that Donnelly's actions infringed upon Dura's '769 Patent. The relevant portions of independent claims 1, 4, 16, 21, and 24 of the '769 Patent are as follows:

> 1. A motor vehicle window construction in a motor vehicle, comprising, in combination:
>> frame means mounted in a window recess in a vehicle body ***comprising a circumferential frame member*** with a first cable directional block integral with a lower horizontal portion of the frame member...

A pull-pull cable drive assembly for moving the slider subassembly laterally back and forth between its full open and closed positions, the pull-pull cable drive assembly comprising:

......wherein a section of the first drive cable segment extends in a first cable channel in the substantially horizontal lower portion of the frame member, and the first cable directional block forms a *curved internal passageway* guiding the drive cable from the first cable channel to a first entry point.

4.  A multi-pane window construction in a motor vehicle, the window construction comprising, in combination;

frame means mounted in a window opening of a motor vehicle body, *comprising a circumferential frame member* having substantially vertical right and left portions interconnected by substantially horizontal upper and lower portions, with a first cable directional block integral with the lower horizontal portion of the frame member...

......wherein a section of the first drive cable segment extends in a first cable channel in the substantially horizontal lower portion of the frame member, and the first cable directional block forms a *curved internal passageway* guiding the drive cable from the first cable channel to a first entry point.

16.  A retrofitting kit for retrofitting a manual-slide window construction installed in a motor vehicle to be power operated, the window construction *comprising a circumferential frame* and a transparent pane slidably mounted in the frame for sliding back and forth between an open position and a closed position...the retrofit kit comprising:

...left and right conduit attachment brackets for attachment to the window construction remote from the transparent pane each forming a *curved internal passageway*...

21.  A window construction installed in a window opening or a motor vehicle body, comprising:

a *circumferential frame* and a transparent pane slidably mounted in the frame for sliding laterally back and forth between an open position and a closed position...

A left conduit attachment bracket mounted to the window construction to the left of, and remote from, the transparent pane and a right conduit attachment bracket mounted to the window construction to the right or, and remote from the transparent pane each conduit forming a *curved internal passageway*...

26.  A motor vehicle window construction in a motor vehicle, comprising, in combination:

frame means for mounting mounted in a window recess in the a (*sic*)

3

vehicle body ***comprising a circumferential frame member*** with a
flat cable directional block contacting a lower horizontal portion of
the frame member...

......wherein a section of the first drive cable segment extends in a first
cable channel in the substantially horizontal lower portion of the
frame member, and the first cable directional block forms a ***curved
internal passageway*** guiding the drive cable from the first cable
channel to a first entry point.

['769 Patent, Def.'s Ex. 1, Doc. No. 201, p.MD000924-27 (emphasis added)].

Donnelly has filed several dispositive motions before the Court, one of which is the

instant Motion for Summary Judgement of Noninfringement of U.S. Patent No. 5,724,769 [Doc.

No. 201]. Donnelly alleges that its product, the GMT900 power sliding rear window, does not

utilize either a circumferential frame or a curved internal passageway, and as such does not

infringe upon the '769 Patent. [*See* Def.'s Motion, Doc. No. 201, p.2].

## STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c), *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment,

the district court must view the evidence in the light most favorable to the non-moving party and

must draw all reasonable inferences in its favor. *Matsushita Elec. Inc. Co. Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

Counts V through VIII of Dura's complaint allege violations under 35 U.S.C. §§ 101 and

271 for infringement, contributory infringement, inducement of infringement, and willful

4

infringement of the '769 Patent.  Dura alleges that Donnelly infringed upon the '769 Patent by using technology covered by the '769 Patent in Donnelly's GMT900 power sliding rear window.

Donnelly's instant motion requires this court to engage in a three-step analysis: 1) properly construe the terms of the '769 Patent; 2) determine whether the GMT900 literally infringes upon the properly construed terms of the '769 Patent; and 3) if no literal infringement is found, determine whether the GMT900 infringes on the properly construed terms of the '769 Patent under the doctrine of equivalents.  *See Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1563 (Fed.Cir.1996).  Donnelly has also asserted a defense under the theory of prosecution history estoppel.  Ultimately, Donnelly's arguments fail on all grounds presented in this motion.

I.  Construction of the Terms of the '769 Patent

The proper construction of the terms of the '769 Patent is a question of law for the Court. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-89 (1996) ("Patent construction in particular is a special occupation, requiring, like all others, special training and practice.  The judge, from his training and discipline, is more likely to give a proper interpretation to such instruments than a jury. . .").

When construing patent specification claims, the Court begins by "look[ing] to the words of the claims themselves. . .to define the scope of the patented invention."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed.Cir.2005)(*en banc*).  The words of a claim "are generally given their ordinary and customary meaning."  *Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996).  The ordinary and customary meaning of a claim term is the meaning that the term "would have to the person of ordinary skill in the art in question at the time of the invention."  *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111,

1116 (Fed.Cir.2004).

"[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips* at 1313. The specification is always highly relevant to the claim construction analysis; "[u]sually it is dispositive, it is the single best guide to the meaning of a disputed single term." *Id.* at 1315.

Because claim terms are normally used consistently throughout the patent, "the usage of a term in one claim can often illuminate the meaning of the same term in other claims. . . Differences among claims can also be a useful guide. . . ." *Id.* at 1314. However, "a sound claim construction need not always purge every shred of ambiguity. The resolution of some line drawing problems - especially easy ones. . .is properly left to the trier of fact." *Accumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed.Cir.2007) (internal citations omitted).

As stated *supra*, *Phillips* instructs this Court to construe the '769 Patent "[with]in the context of the entire patent, including the specification." *Id.* at 1313. With that in mind, the Court first turns its attention to the expressed intent of the '769 Patent's inventors in creating their invention. The '769 Patent's "Background" section begins with the following paragraph:

> Motor vehicle window assemblies having one or more laterally sliding panes, that is, panes which slide substantially horizontally in the vertical plane of the pane, may be either manually operated or operated by electric motor. Such window assemblies are used, for example, ***as rear sliding windows for pickup truck cabs, typically having a circumferential (that is, outer peripheral) frame in which are mounted a sliding pane along with one or more fixed panes.*** The frame may be structural or semi-structural, in that it integrates the sliding pane and one or more fixed-position panes as a self-contained preassembled module suitable for shipping and handling during installation into a motor vehicle.

['769 Patent, Def.'s Ex. 1, p.MD000920 (emphasis added)]. It is of particular relevance that this

6

regards a "circumferential frame" as only a "typical" embodiment of such technology, not a requirement for the final work product.

The inventors of the '769 Patent also recognized the intellectual property of others in the field, notably U.S. Patent No. 4,920,5698, issued to Friese et al. ("the Friese Patent"). The inventors highlight the main difference their invention has compared to the Friese Patent: "Friese et al has an undesirably complex mechanism for delivering drive power from a electric motor for moving the sliding pane between its open and closed positions." *Id*. The '769 Patent therefore seeks to build upon the prior state of the art by designing "a reliable, less complex drive system for a powered sliding window assembly, especially a sliding window assembly wherein the sliding window pane in its closed position can be flush with adjacent fixed panes." *Id*.

In the "Summary" section of the '769 Patent, the inventors make very clear that, while they envision the "circumferential frame member" disclosed to be a unitary structure, their patent was not intended to be limited to that claim. "The circumferential frame member of such embodiments *can* [not must] be formed of molded plastic as a single unitary item, with open and/or closed cross-sectional configuration channels formed therein." *Id*. at MD000921 (emphasis added).

The "Detailed Description of Certain Preferred Embodiments" section of the '769 Patent is also instructive. While the inventors had certain applications of their invention in mind, they specifically intended the '769 Patent's claims to cover more than simply their limited examples outlined within the terms of the '769 Patent itself:

> In light of the foregoing disclosure of the invention and description of certain preferred embodiments, those who are skilled in this area of technology will readily understand that various modifications and adaptations can be made

7

without departing from the true scope and spirit of the invention.  ***All such modifications and adaptations are intended to be covered*** by the following claims. . . .

*Id*. at MD000924 (emphasis added).  Thus, in considering Donnelly's arguments regarding the claim terms of the '769 Patent, *Phillips* instructs this Court to look to the language of the entire patent specification, which expressly requires this Court to ignore any "modifications and adaptations" which may make Donnelly's GMT900 different from the literal claims of the '769 Patent, but do not depart from "the true scope and spirit" of the '769 Patent's intent.

The "Preferred Embodiment" section of the '769 Patent elaborates upon what the inventors meant in using the phrase "circumferential frame" as follows:

> . . .Suitable positioning means may be employed, such as a so-called halo molding, to facilitate the proper positioning of the window construction in the window opening 30.  In this regard, ***the frame 18 is said to be circumferential in the sense that it forms a <u>complete or substantially complete perimeter</u>*** around the glazing planes. . .
> . . .In accordance with current design preferences, the circumferential frame preferably includes at least one unitary full-circumference member extending all the way around the perimeter.  ***Such full-circumference member can be formed by injection molding in-place around the fixed-position panes employing suitable plastics*** . . .It will be within the ability of those skilled in the art, given the benefit of the present disclosure, ***to design and construct frames suitable to specific applications***.

*Id*. at MD000922 (emphasis added).  The "Preferred Embodiment" section of the '769 Patent also elaborates upon what the inventors meant by the phrase "curved internal passageway" as follows:

> . . .It will be within the ability of those skilled in the art, given the benefit of the present disclosure, to employ suitable cable guide means, such as guides 33 shown in FIG. 1 for mounting and guiding the travel path of the drive cable from the remotely mounted motor and drive drum apparatus to the window frame...***A serpentine passageway*** 60 extends from socket 58, guiding drive cable 42 into proper alignment with a cable channel 62 (see FIG. 3) extending laterally within

8

lower frame portion 26. . . .

*Id*. at MD000923 (emphasis added).

        A.  <u>Proper Construction of the Term "Circumferential Frame"</u>

Donnelly argues their GMT900 power sliding rear window does not infringe upon the '769 Patent due to the absence of a "circumferential frame" as is taught in the claims of the '769 Patent. [Def.'s Br., Doc. No. 201, p.9].  As discussed *supra*, *Phillips* instructs this Court to construe the phrase "circumferential frame" not only through examination of the actual claim language, but within the context of the entire patent.

Donnelly argues that "the definition within the patent itself makes it clear that the window frame covers the entire circumference of the window assembly. . . ." *Id*.  They go on to argue that, "[v]ery clearly, the circumferential frame is a rigid structure formed of relatively slender pieces that surrounds the outer body of the window assembly." *Id*. at 10.

  Dura objects to Donnelly's proposed definition as unduly limiting the terms of the '769 Patent.  They argue that "circumferential" merely means "of, at or near the periphery of the window."  Dura also points to the language of the '769 Patent's specification, which states that "the circumferential frame preferably includes at least one unitary full-circumference member extending all the way around the perimeter." [Def.'s Ex. 1, Doc. No. 201, p.MD000922].  "The specification thus makes clear that the **only** circumferential frames that extend all the way around the perimeter are those circumferential frames that have a **full** circumference member." [Pl.'s Br. Doc. No. 250, p.5 (emphasis in original)].

The Court agrees with Dura's proffered argument regarding the proper construction of the phrase "circumferential frame" within the '769 Patent.  Donnelly reads the term "circumferential

frame" to necessarily surround the entire body of the window, a definition clearly at odds with the plain language within the "Preferred Embodiment" section of the '769 Patent.  The inventors of the '769 Patent preferred that the "circumferential frame" include "at least one full-circumference member extending all the way around the perimeter," but did not necessarily require a full-circumference member to be utilized.  The inventors' use of the phrase "full-circumference member," described in the "Preferred Embodiment," is analogous to that which Donnelly argues the phrase "circumferential frame" embodies; an argument which is not justified by the plain language of the '769 Patent.

The Court's construction of the term "circumferential frame" allows the term to be read consistently throughout the '769 Patent.  The "Background" provisions describe the circumferential frame as "outer peripheral" in nature, not necessarily comprising the *entire* periphery. [Def.'s Ex. 1, Doc. No. 201, p.MD000920 (emphasis added)].  Further, the "Preferred Embodiment" language instructs that the circumferential frame should form a "complete or substantially complete perimeter," not simply a complete perimeter as Magna argues.  *Id*. at MD000922.  Exactly how much of the perimeter must be completed to be "substantially complete" is open to interpretation, and is a question of fact which remains to be decided in this case.

B.  Proper Construction of the Term "Curved Internal Passageway"

Donnelly argues their GMT900 power sliding rear window does not infringe upon the '769 Patent due to the absence of:

> [a] block or bracket that forms a passageway that is curved in shape and that is internal to the block or bracket to guide a drive cable from an entry point into proper alignment with a cable channel.

10

[Def.'s Br., Doc. No. 201, p.10].  As discussed *supra*, *Phillips* instructs this Court to construe the phrase "curved internal passageway" not only through examination of the actual claim language, but within the context of the entire patent.

Both Dura and Donnelly concede in their briefs that the phrase "curved internal passageway," as used within the '769 Patent, is clear and unambiguous.[1] [*See* Def.'s Br., Doc. No. 201, p.8; Pl.'s Br., Doc. No. 250, p. 8].  Thus, the Court agrees with the parties, and in construing the instant claim of the '769 Patent, adopts the construction outlined by the Plaintiffs in their brief: "[t]he plain meaning of the claim language is an internal passageway that is curved." [Pl.'s Br., Doc. No. 250, p.9].

II. <u>Literal Infringement of the '769 Patent</u>

As stated *supra*, Donnelly's actions can have infringed upon Dura's '769 Patent in one of two ways: through literal infringement, or under the patent law doctrine of equivalents.  *Amhil Enterprises* at 1563.  "To prove literal infringement, the patentee must show that the accused device contains every limitation in the [properly construed] asserted claims."  *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1358 (Fed. Cir.2002) (citing *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir.1998).

---

[1] In its brief, Donnelly characterizes the "curved internal passageway" as being "serpentine" in nature [*See* Def.'s Br., Doc. No. 201, p.8], a distinction Dura regards as unnecessarily narrowing the '769 Patent's terms [*See* Pl.'s Br., Doc. No. 250, p.9].  While the Court notes that Dura itself describes the required passageway as "serpentine" within the "Preferred Embodiments" section of the '769 Patent [*See* '769 Patent, Def.'s Ex. 1, p.MD000923 (". . .A serpentine passageway 60 extends from socket 58, guiding drive cable 42. . .")], the Court holds this distinction to be one which does not make a difference in the outcome of this motion, and thus declines to resolve this dispute between the parties.

A.  Literal Infringement of the "Circumferential Frame" Requirement

With respect to literal infringement claims upon the "circumferential frame" requirement, Donnelly's argument is entirely dependant upon the Court adopting its proposed construction of the "circumferential frame" requirement as being analogous to a "full circumference member" - an argument the Court rejects for the reasons explained *supra*.

Under the terms of the '769 Patent, as construed by the Court, Donnelly has not shown the absence of a genuine issue of material fact regarding its literal infringement of the '769 Patent's "circumferential frame" requirement.  Indeed, according to the Declaration of Dura's retained expert, William Buehler ("Buehler")[2], "the GMT900 includes such a circumferential frame." [Buehler Decl., Ex. 1, Doc. No. 250, ¶ 9].  Buehler elaborates as follows:

> The upper and lower rails or [*sic*] the GMT900, along with the vertical rails, literally form a complete or substantially complete perimeter around the window, which is mounted in a recess of a vehicle body. . . the upper and lower rails span nearly the entire upper and lower perimeter of the window.  As such, if forms a substantially complete frame.

*Id*. at ¶¶10, 12.  Indeed, even a cursory inspection of the GMT900's schematics confirms Buehler's expert opinions on the subject: the frames form what is arguable a complete perimeter, and certainly form a "substantially complete" perimeter, around the window.  Donnelly has not shown the absence of genuine issues of material fact regarding whether Donnelly's GMT900 literally infringes upon the "circumferential frame" claim of the '769 Patent.  As such, the Court **DENIES** Donnelly's motion with respect to their "circumferential frame" argument.

---

[2]  According to his July 28, 2008 declaration, Mr. Buehler is currently retired, but spent 30 years in the field of movable class systems, including work on sliding window assemblies.  Upon his retirement in 2007 from Ford Motor Company, Mr. Buehler was the only employee to hold the position of Movable Glass Senior Engineer. [Buehler Decl., Ex. 1, Doc. No. 250, ¶4].

B.  Literal Infringement of the "Curved Internal Passageway" Requirement

With respect to literal infringement claims upon the "curved internal passageway"

requirement, Donnelly argues that unlike the '769 Patent, which requires the implementation of a

"curved internal passageway" to guide the drive cable, the GMT900 "includes a pair of pulley

assemblies to guide drive cables." [Def.'s Br., Doc. No. 201, p.11].  Donnelly argues that this

system of pulley assemblies differs from the required "curved internal passageway" of the '769

Patent as follows:

> In particular, each of the pulley assemblies includes a pulley for guiding a drive
> cable from a drive assembly to a cable channel in the lower guide rail of the
> GMT900 power slider.  The drive cable includes a cable core that wraps around
> the pulley in a conventional manner to guide the cable core to the cable channel.
> A housing with a dust cover partially encloses the pulley so that the cable core is
> partially protected about the pulley.  The pulley assemblies do not form any
> "curved internal passageway" as defined by the specification of the '769 Patent
> and its prosecution history.

*Id*.

The Court is not persuaded by Donnelly's argument.  According to the Declaration of

Dura's retained expert, William Buehler ("Buehler"), ". . .the GMT900 has a cable directional

directional block of bracket that forms a curved internal passageway, as recited in the

independent claims of the '769 Patent." [Buehler Decl., Ex. 1, Doc. No. 250, ¶19].  Buehler

elaborates as follows:

> The pulley housing encompassing the pulley of the GMT900 constitutes a block
> that forms a curved passageway that guides a drive cable from an entry point into
> proper alignment with a cable channel.  As seen in the figure below, the pulley
> housing has a curved passageway that is internal to the pulley housing, and the
> curved passageway is used to guide the cable.

*Id*. at ¶21.  Indeed, even a cursory inspection of Donnelly's system of pulley assemblies

13

evidences"passageway" formed for the pulley cable which is "internal" to the mechanism, and which is "curved." [*See* Buehler Decl., Pl.'s Ex. 1, Doc. No. 250, p.5]. At best, genuine issues of material fact remain regarding whether Donnelly's GMT900 literally infringes upon the "curved internal passageway" claim of the '769 Patent. As such, the Court **DENIES** Donnelly's motion with respect to their "curved internal passageway" argument.

     III.   Infringement of the '769 Patent Under the Doctrine of Equivalents

     Even if the Defendant's GMT900 power sliding rear window does not literally infringe upon the '769 Patent, this Court is required to determine whether the GMT900 infringes upon the '769 Patent under the doctrine of equivalents. *See Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1522 (Fed. Cir.1995) ("The trial judge does not have discretion to choose whether to apply the doctrine of equivalents when the record shows no literal infringement.").

     The doctrine of equivalents is founded upon the premise that "[t]he scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claim described." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabuskhiki Co.*, 535 U.S. 722, 732 (2002). The Federal Circuit laid out the requirements for finding infringement under the doctrine of equivalents as follows:

> Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *Warner-Jenkinson*, 520 U.S. at 40. A claim element is equivalently present in an accused device only if insubstantial differences distinguish the missing element from the corresponding aspect of the accused device. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir.1997). Whether a component in the accused subject matter preforms substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination. *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir.1998).

*Leggett & Platt*, 285 F.3d at 1358-59 (emphasis added).  Infringement under the doctrine of equivalents "requires an intensely factual inquiry. . .Thus, th[e] court will only. . . grant. . . summary judgement if the record contains no genuine issue of material fact and leaves no room for a reasonable jury to find equivalence."  *Id*. at 1357 (internal citations omitted).

Despite Donnelly's arguments to the contrary, issues of material fact remain regarding whether the GMT900 infringes upon the '769 Patent under the doctrine of equivalents.

With respect to the "circumferential frame" requirement, Buelher argues that even if this Court did not find the GMT900 to literally infringe upon the terms of the '769 Patent, "the frame of the GMT900 performs the same function and achieves the same result of providing support for all of the panes in the slider assembly.  And it does so in the same way."  [Buehler Decl., Pl.'s Ex. 1, Doc. No. 250, ¶15].  Further, "[e]ven if only the upper and lower guide rails of the GMT900 are considered, the GMT900 still satisfies Donnelly's definition of "circumferential frame member."  *Id*. at ¶18.  As such, assuming *arguendo* that the GMT900 does not literally infringe upon the '769 Patent - a conclusion the Court does not reach in this motion - Donnelly has failed to show the absence of genuine issues of material fact that the GMT900 does not infringe upon the '769 Patent under the doctrine of equivalents.  For this reason, the Court **DENIES** Donnelly's motion on that ground.

Likewise, with respect to the "curved internal passageway" requirement, Buehler argues that even if this Court did not find the GMT900 to literally infringe upon the terms of the '769 Patent, "there is no substantial difference between the GMT900's pulley assembly and the cable directional block or bracket with a curved internal passageway recited in the independent claims of the '769 patent."  *Id*. at ¶22.  Further, "any differences between the 'pulley and pulley housing'

15

of the GMT900 and [the] directional block or bracket recited in the claims of the '769 patent are insubstantial." *Id*. at ¶23. As such, assuming *arguendo* that the GMT900 does not literally infringe upon the '769 Patent - a conclusion the Court does not reach in this motion - Donnelly has failed to show the absence of genuine issues of material fact that the GMT900 does not infringe upon the '769 Patent under the doctrine of equivalents. For this reason, the Court **DENIES** Donnelly's motion with respect to their doctrine of equivalents arguments.

IV. Donnelly's Prosecution History Estoppel Defense

Donnelly argues that Dura is estopped from arguing that the '769 Patent's terms cover Donnelly's alleged infringement because of the history of Dura's patent prosecution before the U.S. Patent and Trademark Office. Specifically, Donnelly claims that the inventors of the '769 Patent narrowed the patent's claims to distinguish their invention from that of Tschirchwitz et al ("Tschirchewitz"), and that this narrowing of the terms in the '769 Patent precludes a finding of infringement in the instant case.

Prosecution history estoppel "ensures that the doctrine of equivalents remains tied to its underlying purpose." *Festo Corp. v. Shoketsu Kogyo Kabuskiki Co.*, 535 U.S. 722, 734 (2002). The Supreme Court in *Festo* elaborated as follows:

> Where the original application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question. The doctrine of equivalents is premised on language's inability to capture the essence of innovation, but a prior application describing the precise element at issue undercuts that premise. In that instance the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter.

*Festo* at 734-35.

16

To determine whether a claim gives rise to prosecution history estoppel, the Court must engage in a two-part evaluation: 1) determine whether the amendment narrowed the scope of the claim; and if so, 2) examine the reason why the applicant amended the claim. *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir.2003) (citing *Warner-Jenkinson*, 520 U.S. 12, 32-33 (1997)). The patentee must show that "at the time of the amendment, one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." *Festo* at 741. The burden is on the patent holder to establish that the reason for the amendment is unrelated to patentability; absent such an explanation, the Court "should presume that the applicant had a substantial reason related to patentability for the amendment." *Pioneer Magnetics* at 1356.

Donnelly argues that, at the time of the '769 Patent's prosecution, the Tschirchwitz mechanism bearing U.S. Patent No. 5,333,411 was well-established as part of the prior art. "Tschirchwitz showed a window regulator utilizing pulleys to guide the cable. In order to overcome this prior art, Applicants added the limitation of a block or bracket forming a "curved internal passageway" to guide the drive cable." [Def.'s Br., Doc. No. 201, p.12]. As such, Donnelly argues, "Dura cannot argue that a covered pulley assembly is equivalent to a block of bracket having a curved internal passageway since that very same alleged equivalent was shown in the prior at and specifically avoided by the Applicants during prosecution to secure grant of the '769 Patent." *Id.* at 13.

Donnelly's argument is without merit. As noted by Buehler in his declaration, the "GMT is different from the system disclosed in Tschirchwitz in that the GMT900 has a cable directional block forming a curved internal passageway that is not found in Tschirchwitz." [Buehler Decl.,

17

Pl.'s Ex. 1, Doc. No. 250, ¶24].  This "curved internal passageway" requirement was specifically added by the inventors of the '769 Patent to get around the prior art as disclosed by Tschirchwitz, as Tschirchwitz did not disclose a "curved internal passageway" requirement for the cable directional block.  As explained *supra*, genuine issues of material fact remain regarding whether Donnelly's GMT900 includes just such a "curved internal passageway" within its design.  For this reason, the Court **DENIES** Donnelly's motion with respect to its arguments regarding prosecution history estoppel.

CONCLUSION

For the reasons explained above, the Court **DENIES** Donnelly's Motion for Summary Judgement of Noninfringement of U.S. Patent No. 5,724,769 [Doc. No. 201].

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 23, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 23, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager