UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURA GLOBAL TECHNOLOGIES,
INC., DURA OPERATING CORP.,

        Plaintiffs,                                Case No. 07-10945

v.                                       HONORABLE SEAN F. COX
                                             United States District Judge

MAGNA DONNELLY CORPORATION,
a/k/a DONNELLY CORPORATION,

        Defendant.

_____/

OPINION & ORDER DENYING DEFENDANT'S SECOND MOTION FOR SUMMARY
JUDGMENT OF NONINFRINGMENT OF U.S. PATENT No. 6,766,617 [Doc. No. 202]

Plaintiff Dura Global Technologies, Inc. ("Dura") filed this patent infringement, unfair

competition, and trade secret misappropriation action on March 5, 2007. The matter is currently

before the Court on Defendant Magna Donnelly Corporation's ("Donnelly") Second Motion for

Summary Judgement of Noninfringement of U.S. Patent No. 6,766,617 ("the '617 Patent") [Doc.

No. 202]. The parties have fully briefed the issues, and the Court declines to hear oral argument

pursuant to Local Rule 7.1(e)(2). For the following reasons, the Court **DENIES** Donnelly's

Motion [Doc. No. 202].

BACKGROUND

Dura supplies door modules, glass systems including integrated modular window

assemblies, seat mechanisms, and other engineered assemblies to automotive manufacturers such

as General Motors ("GM"). Dura was the first company to market an OEM power sliding rear

window for pickup trucks, and was awarded two patents by the USPTO related to this product: 1)

1

Patent No. 6,766,617 ("the '617 Patent"), entitled "Power Sliding Rear Window," on July 24,

2004; and 2) Patent No. 5,724,769 ("the '769 Patent"), entitled "Motor Vehicle Construction

with Pull-Pull Cable System," on March 10, 1998.

Dura filed this action against Donnelly on March 5, 2007, based on federal question

jurisdiction.  In its Complaint, Dura alleges that Donnelly induced key employees of Dura to

leave Dura and go to work for Donnelly.  Dura also alleges that Donnelly induced these

employees to take proprietary information and trade secrets relative to Dura's business with them

for Donnelly's own benefit. Dura's Complaint alleges the following eleven claims:

| | |
|---|---|
| Count I: | Infringement of the '617 Patent; |
| Count II: | Contributory Infringement of the '617 Patent; |
| Count III: | Inducement of Infringement of the '617 Patent; |
| Count IV: | Willful Infringement of the '617 Patent; |
| | |
| Count V: | Infringement of the '769 Patent; |
| Count VI: | Contributory Infringement of the '769 Patent; |
| Count VII: | Inducement of Infringement of the '769 Patent; |
| Count VIII: | Willful Infringement of the '769 Patent; |
| | |
| Count IX: | Misappropriation of Trade Secrets [in violation of MI State Law]; |
| Count X: | Common Law Unfair Competition; and |
| Count XI: | Intentional Interference with Prospective Economic Advantage. |

Counts I through IV allege causes of action which pertain to Dura's power sliding rear

window system, alleging that Donnelly's actions infringed upon Dura's '617 Patent.  The

relevant portions of independent claims 3, 4, 6-10, 14, 15 and 18 of the '617 Patent are as

follows:

3.  The sliding window assembly according to claim 2, *wherein the guide bracket is at least partially supported by the flanges* and sides along the flanges as the sliding pane is moved between the closed and open positions.

4.  The sliding window assembly according to claim 2, wherein the guide bracket has a *pair of outwardly extending legs* which are located between the

flanges and the bottom wall of the frame member to form the interference.

6.  The sliding window assembly according to claim 5, **wherein the sliding panel is secured to the guide bracket with an interference fit** between the sliding panel and the slot so that the sliding panel is retained in the slot by friction.

7.  The sliding window assembly according to claim 5, further **comprising at least one tab secured to the guide bracket and wherein the sliding pane is secured to the tab with adhesive**.

8.  The sliding window assembly according to claim 1, further **comprising a circumferential frame surrounding the sliding pane** and a pair of fixed panes.

9.  The sliding window assembly according to 8, wherein the **circumferential frame** includes a bottom portion forming a frame channel and the frame member is at least partially located within the frame channel of the bottom portion.

10.  A sliding window assembly for a motor vehicle comprising, in combination: a frame member forming a channel having a length, a width, and a height; a guide bracket located at least partially within the channel and slidable along the length of the channel;

. . .**first and second transition blocks** located at least partially within the channel of the frame member at opposite ends of the frame member and movable in a direction along the length of the channel;

wherein the **first and second transition blocks** each form a passage receiving an end of a conduit potion of the drive cable and through which a core portion of the drive cable passes to the guide bracket; and

wherein the frame member forms the first interference with the **transition blocks** to limit movement of the transition blocks in the direction along the height of the channel, the frame member forms a second interference with each of the **transition blocks** to limit movement of the **transition blocks** in the direction toward a center of the channel, and the frame member forms no interference against movement of the **transition blocks** in the direction away from the center along the length of the channel.

14.  A sliding window assembly for a motor vehicle comprising, in combination: a frame member forming a channel having a length, a width, and a height; a guide bracket located at least partially within the channel and slidable along the length of the channel;

. . .**first and second transition blocks** located at least partially within the channel of the frame member at opposite ends of the frame member and each forming a passage through which the drive cable passes;

. . .wherein each of the *transition blocks* are secured to the frame member
through a snap-fit connection.

15.   A sliding window assembly for a motor vehicle comprising, in combination:
a frame member forming a channel having a length, a width, and a height;
a guide bracket located at least partially within the channel and slideable
along the length of the channel;

. . . *first and second transition blocks* located at least partially within the
channel of the frame member at opposite ends of the frame
member and each forming a passage through which the drive cable
passes;

. . .wherein each of the *transition blocks* has an engagement block which
engages the frame member to form the second interference.

18.   A sliding window assembly for a motor vehicle comprising, in combination:
a frame member forming a channel having a length, a width, and a height;
a guide bracket located at least partially within the channel and slideable
along the length of the channel;

. . . *at least one tab* secured to the guide bracket and secured to the guide
bracket to move the sliding pane between the closed and open positions;
and

*wherein the tab is secured to the guide bracket with a hinge*.

['617 Patent, Def.'s Ex. 1, Doc. No. 202 (emphasis added)].

Donnelly has filed several dispositive motions before the Court, one of which is the

instant Second Motion for Summary Judgement of Noninfringement of U.S. Patent No.

6,766,617 [Doc. No. 202].  Donnelly alleges that its product, the GMT900 power sliding rear

window, does not utilize 1) a guide bracket partially supported by the flanges, 2) outwardly

extending legs, 3) a sliding plane secured to the guide bracket with an interference fit, 4) tabs, 5)

a circumferential frame, or 6) a transition block, and as such does not infringe upon the '617

Patent. [*See* Def.'s Motion, Doc. No. 202, pp.7-18].[1]

---

[1]  Dura has filed an "Emergency Motion for Leave to File Out of Time Sur-Reply" [Doc.
No. 302]. As the Court denies summary judgment on the information presented in the original
briefs filed by the parties alone, the Court **DENIES AS MOOT** Dura's motion [Doc. No. 302].

STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c), *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the district court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in its favor. *Matsushita Elec. Inc. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

ANALYSIS

Counts I through IV of Dura's complaint allege violations under 35 U.S.C. §§ 101 and 271 for infringement, contributory infringement, inducement of infringement, and willful infringement of the '617 Patent. Dura alleges that Donnelly infringed upon the '617 Patent by using technology covered by the '617 Patent in Donnelly's GMT900 power sliding rear window.

Donnelly's instant motion requires this court to engage in a three-step analysis: 1) properly construe the terms of the '617 Patent; 2) determine whether the GMT900 literally infringes upon the properly construed terms of the '617 Patent; and 3) if no literal infringement is found, determine whether the GMT900 infringes on the properly construed terms of the '617 Patent under the doctrine of equivalents. *See Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1563 (Fed. Cir.1996). Ultimately, Donnelly's arguments fail on all grounds presented in this motion.

I. Construction of the Terms of the '617 Patent

The proper construction of the terms of the '617 Patent is a question of law for the Court.

5

*See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-89 (1996) ("Patent construction in particular is a special occupation, requiring, like all others, special training and practice. The judge, from his training and discipline, is more likely to give a proper interpretation to such instruments than a jury. . .").

When construing patent specification claims, the Court begins by "look[ing] to the words of the claims themselves. . .to define the scope of the patented invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)(*en banc*). The words of a claim "are generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The ordinary and customary meaning of a claim term is the meaning that the term "would have to the person of ordinary skill in the art in question at the time of the invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).

"[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips* at 1313. The specification is always highly relevant to the claim construction analysis; "[u]sually it is dispositive, it is the single best guide to the meaning of a disputed single term." *Id.* at 1315.

Because claim terms are normally used consistently throughout the patent, "the usage of a term in one claim can often illuminate the meaning of the same term in other claims. . . Differences among claims can also be a useful guide. . . ." *Id*. at 1314. However, "a sound claim construction need not always purge every shred of ambiguity. The resolution of some line drawing problems - especially easy ones. . . is properly left to the trier of fact." *Accumed LLC v.*

6

*Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) (internal citations omitted).

As stated *supra*, *Phillips* instructs this Court to construe the '617 Patent "[with]in the context of the entire patent, including the specification." *Id*. at 1313. With that in mind, the Court first turns its attention to the expressed intent of the '617 Patent's inventors in creating their invention.

The "Detailed Description of Certain Preferred Embodiments" section of the '617 Patent is instructive. While the inventors had certain applications of their invention in mind, they specifically intended the '617 Patent's claims to cover more than simply their limited examples outlined within the terms of the '617 Patent itself:

> From the foregoing disclosure and detailed description of certain preferred embodiments, it is also apparent that various modifications, additions and other alternative embodiments are possible without departing from the true scope and spirit of the present invention. . . ***All such modifications and variations are withing the scope of the present invention***. . . .

*Id*. (emphasis added). Thus, in considering Donnelly's arguments regarding the claim terms of the '617 Patent, *Phillips* instructs this Court to look to the language of the entire patent specification, which expressly requires this Court to ignore any "modifications and adaptations" which may make Donnelly's GMT900 different from the literal claims of the '617 Patent, but do not depart from "the true scope and spirit" of the '617 Patent's intent.

II. The '617 Patent and the Phrase "At Least Partially Supported by the Flanges"

Donnelly argues their GMT900 power sliding rear window does not infringe upon the '617 Patent because the GMT900 does not include a guide bracket "at least partially supported by the flanges," as is taught in the claims of the '617 Patent. [Def.'s Br., Doc. No. 202, p.10]. Claim 2 of the '617 Patent reads as follows:

7

3.  The sliding window assembly according to claim 2, ***wherein the guide bracket
    is at least partially supported by the flanges*** and sides along the flanges as
    the sliding pane is moved between the closed and open positions.

['617 Patent, Def.'s Ex. 1, Doc. No. 202 (emphasis added)]. Donnelly's brief makes no argument

that the phrase "at least partially supported by the flanges" requires any special construction.

Donnelly argues that "the flanges" discussed in Claim 3 refers to the "opposed flanges

inwardly extending from the side walls [of the channel] to form the interference with the guide

bracket" discussed in Claim 2.  Further, Donnelly argues that the "Preferred Embodiments"

section of the patent, at column 5, lines 12-15 envisions that the flanges will support the guide

bracket: "[t]he flanges 44 are at the same height and their upper surfaces cooperate to form a

support surface 46 for the pane guide bracket 22. . . ."

The Court disagrees with Donnelly's proposed claim construction, as it unreasonably

narrows the intended scope of Claim 3.  While the "Preferred Embodiments" section of the '617

Patent envisions that the interference flanges would support the guide bracket, that limitation was

not included within the terms of Claim 3 itself.  Donnelly's narrow claim construction of the

phrase "at least partially supported by the flanges" would thus violate what the Federal Circuit

has cautioned to be a basic claim construction canon:

> . . . one may not read a limitation into a claim from the written description.
> Although one may look to the written description to define a disputed term
> already in a claim limitation, the resulting claim interpretation must, in the end,
> accord with the words chosen by the patentee to stake out the boundary of the
> claimed property.

*RF Delaware, Inc. v. Pacific Keystone Tech., Inc.*, 326 F.3d 1255, 1264 (Fed. Cir. 2003)(internal

quotations omitted).  The inventors of the '617 Patent may have envisioned the *preferred*

*embodiment* of their invention to have the flanges act as a "support surface" for the guide

8

bracket, but Claim 3 was drafted much more broadly. The Court construes the relevant language

in Claim 3 to require, as the plain language of that claim suggests, that the flanges "at least

partially support[]" the guide bracket.

> Donnelly argues its GMT900 differs from the '617 Patent as follows:
>
> The GMT900 power slider does not include any support by the interference side
> flanges. The side flanges of the GMT900 operate from the sides to provide
> interference and secure the guide bracket from lifting out of the channel; however,
> the guide bracket does *not* rest upon the side interference flanges. The guide
> bracket is not supported in any manner by the side interference flanges. Instead,
> the GMT900 is supported by a second, larger set of flanges which are located
> completely below the guide bracket. In the GMT900, the guide bracket is
> supported by, and travels on top of, the lower, second row of flanges.

[Def.'s Br., Doc. No. 202, p.11 (emphasis in original)]. As such, Donnelly argues that the

GMT900 does not literally infringe upon Claim 3 of the '617 Patent.

> The Court finds this argument to be without merit. In its brief, Donnelly itself admits that

"[t]he side flanges of the GMT900 operate from the sides to provide interference and secure the

guide bracket from lifting out the channel." [Def.'s Br., Doc. No. 202, p.11]. Further, according

to the Declaration of Dura's retained expert, William Buehler ("Buehler")[2]:

> . . . the side flanges [of the GMT900] (e.g., upper set of flanges) hold the guide
> bracket in position, so as to keep the guide bracket from moving or slipping. In
> other words, the picture [of the GMT900] clearly shows that the guide bracket is
> supported by the side flanges.

[Buehler Declaration, Pl.'s Ex. B, Doc. No. 251, ¶8]. As the evidence in this case shows that the

guide bracket for Donnelly's GMT900 is supported, at least in part, by the device's upper

---

[2] According to his July 28, 2008 declaration, Mr. Buehler spent 30 years in the field of movable
class systems, including work on sliding window assemblies. Upon his retirement in 2007 from Ford
Motor Company, Mr. Buehler held the position of Movable Glass Senior Engineer. [Buehler Decl., Ex.
B, Doc. No. 251, ¶4].

9

flanges, Donnelly has failed to demonstrate the absence of a genuine issue of material fact with respect to their alleged literal infringement of Claim 3, and their motion with respect to that argument is **DENIED**.

Even if the Defendant's GMT900 power sliding rear window does not literally infringe upon Claim 3 of the '617 Patent, this Court is required to determine whether the GMT900 infringes upon the '617 Patent under the doctrine of equivalents. *See Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1522 (Fed. Cir.1995) ("The trial judge does not have discretion to choose whether to apply the doctrine of equivalents when the record shows no literal infringement.").

The doctrine of equivalents is founded upon the premise that "[t]he scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claim described." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabuskhiki Co.*, 535 U.S. 722, 732 (2002). The Federal Circuit laid out the requirements for finding infringement under the doctrine of equivalents as follows:

> Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *Warner-Jenkinson*, 520 U.S. at 40. A claim element is equivalently present in an accused device only if insubstantial differences distinguish the missing element from the corresponding aspect of the accused device. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997). Whether a component in the accused subject matter preforms substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination. *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).

*Leggett & Platt*, 285 F.3d at 1358-59 (emphasis added). Infringement under the doctrine of equivalents "requires an intensely factual inquiry. . .Thus, th[e] court will only. . . grant. . .

10

summary judgement if the record contains no genuine issue of material fact and leaves no room for a reasonable jury to find equivalence." *Id*. at 1357 (internal citations omitted).

Assuming *arguendo* that Donnelly's GMT900 does not literally infringe upon the '617 Patent's third claim, Donnelly still has not demonstrated the absence of a genuine issue of material fact regarding infringement under the doctrine of equivalents. Donnelly contends that there is a substantial difference between the GMT900 and the guide bracket called for in Claim 3 because the guide bracket of the GMT900 is not supported by the interference side flanges but rather by a second, larger pair of flanges located below the guide bracket. [*See* Def.'s Br., Doc. No. 202, p.11].

The Court finds this argument to be without merit. As noted by Buehler in his Declaration on Dura's behalf:

> As clearly shown[,] the GMT900 has a guide bracket which is at least partially supported by flanges (e.g., both the first, upper set of flanges and the second, lower set of flanges). Further, GMT900's guide bracket slides along these flanges as the sliding pane is moved between the closed and open positions. Hence, the GMT900's guide bracket and flanges perform substantially the same function in substantially the same way to achieve substantially the same result as the guide bracket recited in claim 3.

[Buehler Decl., Pl.'s Ex. B, Doc. No. 251, ¶9]. The Court agrees, and holds that Donnelly has failed to show the absence of a genuine issue of material fact regarding its alleged infringement of the '617 Patent's Claim 3 under the doctrine of equivalents. As such, Donnelly's motion with respect to that argument is **DENIED**.

III.   The '617 Patent and the Term "Outwardly Extending Legs"

Donnelly argues their GMT900 does not infringe upon the '617 Patent because the GMT900 does not include a guide bracket with "outwardly extending legs," as is taught in the

11

claims of the '617 Patent. [Def.'s Br., Doc. No. 202, p.5]. Claim 4 of the '617 Patent reads as

follows:

> 4. The sliding window assembly according to claim 2, wherein the guide bracket
> has a ***pair of outwardly extending legs*** which are located between the
> flanges and the bottom wall of the frame member to form the interference.

['617 Patent, Def.'s Ex. 1, Doc. No. 202 (emphasis added)]. Donnelly admits that the term

"outwardly extending legs" does not require any special construction.[3] [Def.'s Br., Doc. No. 202,

pp.7-8]. The Court construes the relevant language in Claim 4 to require, as the plain language

of that claim suggests, that the guide bracket include "a pair of outwardly extending legs."

Donnelly argues that its GMT900 does not literally infringe upon Claim 4 of the '617

Patent as follows:

> The GMT900 power slider does not include outwardly extending legs located
> under the guide bracket. The guide bracket of the GMT900 is a solid piece of
> material and the flanges which provide interference run along a slight indentation
> in the sides of the solid guide bracket. . . There is no literal infringement where
> there is such a radical difference between claim 4 and the GMT900 guide bracket.

[Def.'s Br., Doc. No. 202, p.12].

The Court finds this argument to be without merit. First, there is no requirement within

Claim 4 that the legs be "located under the guide bracket," *Id.*, but rather merely that the legs be

"located between the flanges and the bottom wall of the frame member." ['617 Patent, Def.'s Ex.

1, Doc. No. 202].

---

[3] However, as was the case with the "at least partially supported by the flanges" claim
construction discussed *supra*, Donnelly again attempts to narrow the construction of Claim 4 by reading
in narrowing language found in the "Preferred Embodiments" section of the '617 Patent. As was
discussed *supra*, to the extent that the "Preferred Embodiments" section of the '617 Patent could be read
to narrow the scope of Claim 4, the Court rejects such a narrow reading of the claim in favor of the plain
and unambiguous language used by the inventors of the '617 Patent.

12

Further, Donnelly's argument that the "slight indentation in the sides of the solid guide bracket" do not actually create "legs" on the guide bracket is nonsensical. As the schematics of Donnelly's GMT900 clearly show, the adding of a "slight indentation" to the guide bracket, in this case, creates "outwardly extending legs" on the bottom of the bracket. This observation is further attested to by Buehler in his Declaration:

> The photograph [of the GMT900]. . . clearly shows that the guide bracket has a pair of outwardly extending legs that are located between the flanges and the bottom wall of the frame member to form an interference.

[Buehler Decl., Pl.'s Ex. B, Doc. No. 251, ¶11]. As the evidence in this case shows that the guide bracket, through the addition of "slight indentation[s]" to that bracket, creates outwardly extending legs on the guide bracket, Donnelly has failed to demonstrate the absence of a genuine issue of material fact with respect to their alleged literal infringement of Claim 4, and their motion with respect to that argument is **DENIED**.

Assuming *arguendo* that Donnelly's GMT900 does not literally infringe upon the '617 Patent's fourth claim, Donnelly still has not demonstrated the absence of a genuine issue of material fact regarding infringement under the doctrine of equivalents. Donnelly contends that no infringement under the doctrine of equivalents exists, as "the bottom of the GMT900 guide rail performs a substantially different function. . . ." [Def.'s Br., Doc. No. 202, p.13].

The Court finds this argument to be without merit. As noted by Buehler in his Declaration on Dura's behalf:

> . . . the structure and positioning of the legs of the GMT900's guide bracket does not change the fact that the GMT900's guide bracket has outwardly extending legs which form an interference with the flanges. Further, whether the GMT900's legs are free floating or resting on flanges does not change the fact that the GMT900's has outwardly extending legs which form an interference with the flanges. Even if

13

these alleged differences exist, they are not substantial and certainly do not affect
the "function, way result" of the guide brackets. . . .

[Buehler Decl., Pl.'s Ex. B, Doc. No. 251, ¶17].  The Court agrees, and holds that Donnelly has

failed to show the absence of a genuine issue of material fact regarding its alleged infringement

of the '617 Patent's Claim 4 under the doctrine of equivalents.  As such, Donnelly's motion with

respect to that argument is **DENIED**.

      IV.  <u>The '617 Patent and the Phrase "Secured to the Guide Bracket With An Interference
Fit"</u>

Donnelly argues that their GMT900 does not infringe upon the '617 Patent because the

GMT900 does not include a sliding pane "secured to the guide bracket with an interference fit,"

as is taught in the claims of the '617 Patent. [Def.'s Br., Doc. No. 202, p.13].  Claim 6 of the

'617 Patent reads as follows:

> 6.  The sliding window assembly according to claim 5, ***wherein the sliding panel
> is secured to the guide bracket with an interference fit*** between the
> sliding panel and the slot so that the sliding panel is retained in the slot by
> friction.

['617 Patent, Def.'s Ex. 1, Doc. No. 202 (emphasis added)]. Donnelly argues the phrase "secured

to the guide bracket with an interference fit" should be construed as follows:

> This element of the claim requires that the pane of glass be forced into an
> extremely tight spot in the top of the guide bracket, so that it is wedged therein
> and cannot be removed.  The claim does not permit or call for the use of adhesives
> or any other means to secure the sliding pane of glass to the guide bracket other
> than an interference fit so that the pane of glass is held in place solely by friction.

[Def.'s Br., Doc. No. 202, p.13].

The Court disagrees with Donnelly's proposed claim construction, as it unreasonably

requires negative limitations which are not present in the claim language, and further as it

resolves the ambiguous language within Claim 6 by contradicting the '617 Patent's specification language.

The Dictionary of Automotive Terms[4] defines an "interference fit" as "[a] condition of fit (contact) between two parts that requires pressure to force the parts together." [*See* Pl.'s Ex. R, Doc. No. 251].  Nothing within this definition states that the term "interference fit" requires that the pressure or friction used to bind the pane to the guide bracket be the *sole* method by which the pane and the guide bracket are bound.  While Claim 6 goes on to require that "the sliding panel [be] retained in the slot by friction," nothing within Claim 6 mandates that the panel must be retained in the slot *solely* by friction.

To otherwise construe the ambiguous language within Claim 6 would create a definition at odds with the '617 Patent's specification, which envisions that a tab bonded to the guide bracket would also be secured to the pane *with adhesive tape*:

> The guide bracket 18 includes a pair of tabs 70 which are located near the ends of the guide bracket 22. . . The tabs 70 are each pivotably connected to the guide bracket 22. . . wherein the tabs 70 are spaced from the sliding pane 18 (shown in FIG. 7) and a generally vertical engaging position wherein the tab 70 engages the side surface of the sliding pane 18. . . ***The tab 70 is provided with double-sided, pressure-sensitive adhesive tape 74 to secure the tab 70 to the sliding pane 18.***

['617 Patent, Def.'s Ex. 1, Doc. No. 202, Col. 6, ll.49-64 (emphasis added)].  Thus, the inventors of the "617 Patent themselves envisioned the sliding pane to not only be secured to the guide bracket via an "interference fit," but also by adhesive tape (albeit through an intermediary tab). For these reasons, the Court construes the relevant language in Claim 6 to require as follows, quoting from Dura's brief: "As long as an interference fit is present between the glass and slot, it

---

[4]

Dictionary of Automotive Terms, http://www.motorera.com/dictionary/IN.HTM

is irrelevant whether an adhesive is also present." [Pl.'s Br., Doc. No. 251, p.10].

Donnelly argues that its GMT900 differs from the '617 Patent as follows:

The GMT900 does not secure the sliding pane to the guide bracket with an interference fit.  The GMT900 used adhesives to bond the pane to the guide bracket.  This process involves the allowance of clearances in the component parts to make room for the adhesives and binding process. . . This process is clearly not an interference fit and does not literally infringe [upon the claims of the '617 Patent].

[Def.'s Br., Doc. No. 202, p.13].

While a closer question than the two infringement claims discussed *supra*, the Court holds that Donnelly has not demonstrated the absence of a genuine issue of material fact with respect to their alleged infringement of Claim 6.  While Donnelly concedes that the GMT900 binds its pane to the guide bracket through the use of an adhesive, no evidence has been offered to disprove the possibility that friction, at least in part, also binds the pane to the guide bracket. Just as the '617 Patent uses *a combination* of friction and adhesives to bind the pane to the guide bracket, so to does it appear from the exhibits filed by the parties that *a combination* of friction and adhesives also binds the pane to the guide bracket in the GMT900.

Without evidence that friction plays *no part* in the binding process for the GMT900, summary judgment on Dura's literal infringement claim regarding an "interference fit" is improper.  Therefore, Donnelly's motion with respect to that argument is **DENIED**.

Though the question of *literal* infringement of Claim 6 may be a close question in the instant case, the question of infringement *under the doctrine of equivalents* is not such a close call.  Donnelly argues that "[t]here are substantial differences in the way these processes of securing the pane to the guide bracket are performed and there are substantial differences in the

16

materials used to perform the procedure." [Def.'s Br., Doc. No. 202, p.14].  The Court disagrees

for two reasons.

First, as described *supra*, the '617 Patent *uses an adhesive* to bind the pane to the guide

bracket (albeit through the tab as an intermediary).  In this way, both the '617 Patent and the

GMT900 each use an adhesive to, in part, bind the pane to the guide bracket.

Second, and more importantly, all that Dura is required to prove under the doctrine of

equivalents is that "a component in the accused subject matter preforms substantially the same

function as the claimed limitation in substantially the same way to achieve substantially the same

result." *Leggett & Platt*, 285 F.3d at 1358-59.  Regardless of *how* the GMT900 and the '617

Patent accomplish the task - i.e., by use of either an interference fit, an adhesive, or a

combination of both - the result is the same: *in both instances, the pane is now bound to the*

*guide bracket*.  Both the GMT900 and the '617 Patent seek to accomplish the same goal: to retain

the sliding pane in the channel.  Each accomplishes this goal in substantially the same way: by

binding the pane to the guide bracket.  No evidence has been proffered by Donnelly that the

*method* of binding that is used proves as a matter of law that no infringement occurred under the

doctrine of equivalents.  As such, Donnelly's argument with respect to infringement of Claim 6

under the doctrine of equivalents is **DENIED**.

V.    The '617 Patent and the Phrase "At Least One Tab Secured to the Guide Bracket"

Donnelly argues that their GMT900 does not infringe upon the '617 Patent because the

GMT900 does not include "at least one tab secured to the guide bracket." [Def.'s Br., Doc. No.

202, p.14].  Claim 7 of the '617 Patent reads as follows:

7.  The sliding window assembly according to claim 5, further ***comprising at least***

17

> **one tab secured to the guide bracket and wherein the sliding pane is secured to the tab with adhesive**.

['617 Patent, Def.'s Ex. 1, Doc. No. 202 (emphasis added)].  Donnelly's brief makes no argument that the phrase "at least one tab secured to the guide bracket" requires any special construction, but instead simply argues that the GMT900 does not include a tab.  Dura argues that, in the words of Donnelly, the "entire bottom rail" [Def.'s Reply, Doc. No. 282, p.3] of the guide bracket is a "tab."  As such, the Court must construe the term "tab" within the context of the '617 Patent.

> The Dictionary of Automotive Terms defines the word "tab" as follows:
>
> 1.  A small projecting part as on a tab washer, or on a gasket where it engages with another seal.
> 2.  Not a continuous flange as provided at the top mounting of a fender, but a short flange section to provide localized fitting of one panel to another.

Dictionary of Automotive Terms, http://www.motorera.com/dictionary/TA.HTM.  The definition of the word "flange," a term used in the definition of the word "tab," is as follows:

> 1.  A projecting rim or collar on an object for keeping in place.
> 2.  The parts of a hub shell to which spokes are attached and which secure the tire on the rim base.
> 3.  The circle of metal inside the teeth on a chainring.
> 4.  Right angle bends in sheet metal designed to give rigidity or to eliminate a sharp edge.  Commonly called *bends*.

Dictionary of Automotive Terms, http://www.motorera.com/dictionary/FL.HTM.  As such, the distinction between a "tab" and a "flange," for purposes of the automotive industry, appears to be the relative size of the "small projecting part" discussed in the definition of a "tab."  Indeed, the "tab" definition points out that a "tab" is "[n]ot a continuous flange. . . but a short flange to provide localized fitting."  As such, the Court construes Claim 7 to require a "tab" as opposed to

18

a "flange" secured to the guide bracket, though admittedly the difference between the two is a matter of degree.

Donnelly makes no argument in either its original brief [Doc. No. 202] or in its reply brief [Doc. No. 282] regarding whether the "entire bottom rail" of its guide bracket is properly construed as either a "tab" or a "flange."  Instead, Donnelly merely argues in cursory fashion that "Dura unbelievably points to the *entire* bottom rail of the guide bracket for support for the GMT900.  This is not a small flap or loop, but the *entire bottom rail*." [Def.'s Reply, Doc. No. 282, p.3].  While true, Donnelly makes no argument that the "entire bottom rail" is, as a matter of law, a "flange" instead of a "tab," nor does Donnelly provide any expert opinion supporting this position.  Without more evidence in support of its arguments, the Court holds that Donnelly has failed to demonstrate the absence of a genuine issue of material fact with respect to their alleged literal infringement of Claim 7, and their motion with respect to that argument is **DENIED**.

Assuming *arguendo* that Donnelly's GMT900 does not literally infringe upon the '617 Patent's seventh claim, Donnelly still has not demonstrated the absence of a genuine issue of material fact regarding infringement under the doctrine of equivalents.  Donnelly contends that "[t]he entire side of the guide rail is adhesively attached to the pane; this is substantially different than a tab." [Def.'s Reply, Doc. No. 282, p.4].

The Court disagrees, in light of the substantial overlap between the definitions of a "tab" and a "flange" as outlined *supra*.  These definitions provide that a "tab" and a "flange" work in substantially similar ways to produce substantially similar results, and Donnelly has offered no evidence to suggest otherwise.  As such, the Court holds that Donnelly has failed to show the

19

absence of a genuine issue of material fact regarding its alleged infringement of the '617 Patent's seventh claim under the doctrine of equivalents, and Donnelly's motion with respect to that argument is therefore **DENIED**.

VI.  The '617 Patent and the Term "Circumferential Frame"

Donnelly argues that their GMT900 does not infringe upon the '617 Patent because the GMT900 does not include a "circumferential frame" as is taught in the claims of the '617 Patent. [Def's Br., Doc. No. 202, p.15].  This argument is similar to one made by Donnelly in its Motion for Summary Judgement of Noninfringement of U.S. Patent No. 5,724,769 ("the '769 Patent) [Doc. No. 201].  The Court rejected Donnelly's similar argument in the motion involving the '769 Patent, and it rejects Donnelly's argument in the instant motion as well.

As discussed *supra, Phillips* instructs this Court to construe the phrase "circumferential frame" not only through examination of the actual claim language, but within the context of the entire patent.

Donnelly argues that the '617 Patent "require[s] a frame that forms a complete perimeter around the sliding panes and the left and right fixed panes." [Def.'s Br., Doc. No. 202, p.15]. Dura objects to Donnelly's proposed definition as unduly limiting the terms of the '617 Patent. They argue that the claim merely requires "a circumferential frame surrounding the sliding pane and a pair of fixed panes and not a full-circumference member." [Pl.'s Br., Doc. No. 251, p.12].

The Court agrees with Dura's offered argument regarding the proper construction of the phrase "circumferential frame" within the '617 Patent.  Donnelly reads the term "circumferential frame" to necessarily surround the entire body of the window, a definition clearly at odds with

20

the plain language within the "Preferred Embodiment" section of the '617 Patent:

> The ***circumferential frame*** 12 preferably includes at least one unitary ***full-circumference member*** extending all the way around the perimeter.

['617 Patent, Def.'s Ex. 1, Doc. No. 202, Col. 4, ll.23-26 (emphasis added)].  The inventors of the '769 Patent preferred that the "circumferential frame" include "at least one full-circumference member extending all the way around the perimeter," but did not necessarily require a full-circumference member to be utilized.  The inventors' use of the phrase "full-circumference member," described in the "Preferred Embodiment," is analogous to that which Donnelly argues the phrase "circumferential frame" embodies.  Donnlly's argument is not justified by the plain language of the '617 Patent.

The Court's construction of the term "circumferential frame" allows the term to be read consistently throughout the '617 Patent.  Exactly how much of the perimeter must be completed to be "substantially complete" is open to interpretation, and is a question of fact which remains to be decided in this case.

Applying its definition of a "circumferential frame," which the Court properly recognizes as the definition of a "full-circumference member" instead, Donnelly argues that "[t]he GMT power slider does not have a circumferential frame that surrounds the perimeter of the left and right fixed panes and the sliding pane." [Def.'s Br., Doc. No. 202, p.15].

While true, this argument is contingent upon the proper construction of "circumferential frame" being utilized - a construction which, as explained *supra*, Donnelly did not utilize. Further, as noted by Buehler in his Declaration on Dura's behalf, ". . . the GMT900 has a

21

circumferential frame surrounding the sliding plane." [Buehler Decl., Pl.'s Ex. B, Doc. No. 251, ¶19]. The Court agrees, and holds that Donnelly has failed to show the absence of a genuine issue of material fact regarding its alleged literal infringement of the '617 Patent's claims requiring a "circumferential frame," and their motion with respect to that argument is **DENIED**.

Assuming *arguendo* that Donnelly's GMT900 does not literally infringe upon the '617 Patent's claims requiring a "circumferential frame," Donnelly still has not demonstrated the absence of a genuine issue of material fact regarding infringement under the doctrine of equivalents. Donnelly contends that there are substantial differences between the frame on the GMT900 and the "circumferential frame" of the '617 Patent. [Def.'s Br., Doc. No. 202, p.16].

The Court finds this argument to be without merit. As noted by Buehler in his Declaration on Dura's behalf:

> The circumferential frame recited in claims 8 and 9 surrounds the sliding pane and provides support for all of the three panes in the window, including the fixed panes. Similarly. . ., the GMT900's circumferential frame surrounds the sliding pane, and provides support for all the three panes in the window, including the fixed panes. In my opinion, the GMT900's circumferential frame thus performs substantially the same function in substantially the same way to achieve substantially the same result as the circumferential frame recited in the claims.

[Buehler Decl., Pl.'s Ex. B, Doc. No. 251, ¶20]. The Court agrees, and holds that Donnelly has failed to show the absence of a genuine issue of material fact regarding its alleged infringement upon the '617 Patent's claims requiring a "circumferential frame" under the doctrine of equivalents. As such, Donnelly's motion with respect to that argument is **DENIED**.

VII. <u>The '617 Patent and the Term "Transition Blocks"</u>

Finally, Donnelly argues that their GMT900 does not infringe upon the '617 Patent

because the GMT900 does not include "transition blocks that are allowed to move relative to the frame member," as is taught in the claims of the '617 Patent.

Claim 10 calls for "first and second transition blocks located at least partially within the channel of the frame member at opposite ends of the frame member and ***moveable in a direction along the channel***." Claim 10 further recites that the "first and second transition blocks each form a passage receiving an end of a conduit portion of the drive cable and through which a core portion of the cable passes to the guide bracket." Further, Claims 14 and 15 describe that the transition blocks are located "at opposite ends of the frame member and each forming a passage through which the drive cable passes."

Donnelly argues that the claims of the '617 Patent call for "transition blocks. . . that can slide within the bottom frame, but are restricted from sliding to the center and can slide all away from the center. Also, these transition blocks cannot be lifted out of the frame member due to an interference fit." [Def.'s Br., Doc. No. 202, p16]. Dura objects to Donnelly's claim construction as unduly restrictive, arguing that "there is nothing in the claim language that requires transition blocks which slide in the bottom frame. Instead, claim 10 merely recites that the transition blocks are movable in a direction along the length of the channel. . . ." [Pl.'s Br., Doc. No. 251, p.16].

The Court agrees that Donnelly's offered claim construction is unduly restrictive. Nowhere within the plain language of the '617 Patent's claims is there any evidence to support Donnelly's proposed constraint that the transition blocks be restricted from sliding to the center, but be allowed instead to slide all away from center. Rather, all that the plain and unambiguous

language of the claims involving the term "transition blocks" require is simply that the transition blocks be "moveable in a direction along the channel."

Donnelly argues that its GMT900 differs from the '617 Patent, in that "[t]he GMT900 power slider does not include anything like the transition blocks that are called for in the '617 Patent," [Def.'s Br., Doc. No. 202, p.16], and therefore does not literally infringe upon the terms of the '617 Patent.  The Court disagrees.  As noted by Buehler in his Declaration on Dura's behalf:

> . . . the GMT900's covered pulley assemblies form first and second transition blocks located at least partially within the channel of the frame member at opposite ends of the frame member and through which a cable is transitioned from one point to another. . . . Further, at least a portion of the transition blocks is movable within the channel. . . . Further, as clearly seen the GMT900's covered pulley assemblies, in fact, are attached to a frame member.

[Buehler Decl., Pl.'s Ex. B, Doc. No. 251, ¶¶25-26].  As the evidence in this case shows that the covered pulley assemblies utilized by the GMT900 form first and second transition blocks, and since those transition blocks are located at least partially within the channel of the frame, Donnelly has failed to demonstrate the absence of a genuine issue of material fact with respect to their alleged literal infringement of the '617 Patent's claims requiring "transition blocks," and their motion with respect to that argument is **DENIED**.

Assuming *arguendo* that Donnelly's GMT900 does not literally infringe upon the '617 Patent's claims requiring "transition blocks," Donnelly still has not demonstrated the absence of a genuine issue of material fact regarding infringement under the doctrine of equivalents. Donnelly contends that "[t]here are significant differences between a passageway for a cable and a pulley mechanism." [Def.'s Br., Doc. No. 202, p.17].

The Court finds this argument to be without merit.  As noted by Buehler in his

Declaration on Dura's behalf:

> . . . the GMT900's covered pulley assemblies perform substantially the same
> function in substantially the same way to achieve substantially the same result as
> the transition blocks recited in the claims.  The claimed transition blocks function
> to guide the cable from the drive assembly to the guide bracket so that the cables
> extend from the transition blocks to the guide bracket in a substantially linear
> manner that is parallel to the desired travel for the sliding plane. . . . The GMT900
> covered pulley assemblies perform the same function and achieve the same result
> of guiding the cables between the drive assembly and the guide bracket.  Further,
> the covered pulley assemblies operate in the [*sic*] substantially the same way of
> guiding the cables so that they extend fro the transition blocks to the guide bracket
> in a substantially linear manner that is parallel to the desired travel of the sliding
> plane.

[Buehler Decl., Pl.'s Ex. B, Doc. No. 251, ¶27].  The Court agrees, and holds that Donnelly has

failed the show the absence of a genuine issue of material fact regarding its alleged Infringement

of the '617 Patent's "transition block" requirements under the doctrine of equivalents.  As such,

Donnelly's motion with respect to that argument is **DENIED**.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Donnelly's  Second Motion for

Summary Judgement of Noninfringement of U.S. Patent No. 6,766,617 [Doc. No. 202].

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 29, 2009

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

DURA GLOBAL TECHNOLOGIES,
INC., DURA OPERATING CORP.,

      Plaintiffs,                                Case No. 07-10945

v.                                       HONORABLE SEAN F. COX

                                          United States District Judge

MAGNA DONNELLY CORPORATION,
a/k/a DONNELLY CORPORATION,

      Defendant.

_____/

PROOF OF SERVICE

      I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2009, by electronic and/or ordinary mail.

                        s/Jennifer Hernandez_____

                        Case Manager