UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURA GLOBAL TECHNOLOGIES,
INC., DURA OPERATING CORP.,

    Plaintiffs,

v.

MAGNA DONNELLY CORPORATION,
a/k/a DONNELLY CORPORATION,

    Defendant.
_____/

Case No. 07-10945

HONORABLE SEAN F. COX
United States District Judge

<u>OPINION & ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON COUNT NINE OF PLAINTIFF'S COMPLAINT [Doc. No. 200]</u>

    Plaintiff Dura Global Technologies, Inc. ("Dura") filed this patent infringement, unfair competition, and trade secret misappropriation action on March 5, 2007. The matter is currently before the Court on Defendant Magna Donnelly Corporation's ("Donnelly") Second Motion for Summary Judgement On Count 9 of Dura's Second Amended Complaint [Doc. No. 200]. The parties have fully briefed the issues, and the Court declines to hear oral argument pursuant to Local Rule 7.1(e)(2). For the following reasons, the Court **DENIES** Donnelly's Motion [Doc. No. 200].

BACKGROUND

    Dura supplies door modules, glass systems including integrated modular window assemblies, seat mechanisms, and other engineered assemblies to automotive manufacturers such as General Motors ("GM"). Dura was the first company to market an OEM power sliding rear window for pickup trucks, and was awarded two patents by the USPTO related to this product: 1)

1

Patent No. 6,766,617 ("the '617 Patent"), entitled "Power Sliding Rear Window," on July 24, 2004; and 2) Patent No. 5,724,769 ("the '769 Patent"), entitled "Motor Vehicle Construction with Pull-Pull Cable System," on March 10, 1998.

Dura filed this action against Donnelly on March 5, 2007, based on federal question jurisdiction. In its Complaint, Dura alleges that Donnelly induced key employees of Dura to leave Dura and go to work for Donnelly. Dura also alleges that Donnelly induced these employees to take proprietary information and trade secrets relative to Dura's business with them for Donnelly's own benefit. Dura's Complaint alleges the following eleven claims:

    Count I:    Infringement of the '617 Patent;
    Count II:    Contributory Infringement of the '617 Patent;
    Count III:    Inducement of Infringement of the '617 Patent;
    Count IV:    Willful Infringement of the '617 Patent;

    Count V:    Infringement of the '769 Patent;
    Count VI:    Contributory Infringement of the '769 Patent;
    Count VII:    Inducement of Infringement of the '769 Patent;
    Count VIII:    Willful Infringement of the '769 Patent;

    Count IX:    Misappropriation of Trade Secrets [in violation of MI State Law];
    Count X:    Common Law Unfair Competition; and
    Count XI:    Intentional Interference with Prospective Economic Advantage.

Count IX alleges a cause of action under the Michigan Uniform Trade Secrets Act, M.C.L. § 445.1901 *et seq.*, alleging that Donnelly's actions infringed upon several of Dura's protected trade secrets.

Donnelly has filed several dispositive motions before the Court, one of which is the instant Motion for Summary Judgement on Count 9 of Dura's Second Amended Complaint [Doc. No. 200]. Donnelly argues that the following claimed trade secrets allegedly misappropriated by Donnelly are either not trade secrets of Dura's, or were not misappropriated

2

by Donnelly: 1) the Salary of Mike Earl; 2) Dura's "Costing, Bidding, and Lessons Learned" Database for their GMT900 bid; 3) Dura's Business Customers; 4) Transition Seams; 5) Nonlinear Water Drainage Path; and 6) Deflector. [*See* Def.'s Motion, Doc. No. 200, p.1].

This Court previously issued, on July 11, 2008, an order granting in part and denying in part Donnelly's motion to dismiss Dura's Second Amended Complaint and granting Dura's Motion for leave to file Plaintiff's Second Amended List of Trade Secrets. [*See* Doc. No. 229]. As such, the first three "trade secrets" challenged by Donnelly in the instant motion (Salary of Mike Earl, Dura's "Costing, Bidding and Lessons Learned" Database, and Dura's Business Customers) are no longer alleged to be trade secrets by Dura. The Court therefore **DENIES AS MOOT** Donnelly's Motion with respect to those alleged trade secrets, and will only consider Donnelly's arguments related to Dura's Transition Seams, their Nonlinear Water Drainage Path, and their Deflector.[1]

STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c), *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the district court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in its favor. *Matsushita Elec. Inc. Co. Ltd. v. Zenith Radio*

---

[1] Dura has filed an "Emergency Motion for Extension of Time to File Response/Reply" [Doc. No. 238] as to Donnelly's instant motion, arguing that the deposition testimony of Mr. Denzil Abney and Mr. Garey DeGroff should also be considered by the Court during this motion. As the Court denies summary judgment on the information presented in the original briefs filed by the parties alone, the Court **DENIES AS MOOT** Dura's motion [Doc. No. 238].

*Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

The Michigan Uniform Trade Secrets Act provides a statutory cause of action and available remedies for the misappropriation of trade secrets. M.C.L. § 445.1903. MUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." M.C.L. § 455.1908(1); *see also CMI Int'l, Inc. v. Intermet Int'l Corp.*, 251 Mich. App. 125, 132 (2002). MUTSA defines a "trade secret" as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

M.C.L. § 455.1902(d). Michigan courts use the following factors to determine if information is a trade secret:

> (1) extent to which information is known outside of owner's business, (2) extent to which information is known by employees and others involved in business, (3) extent of measures taken to guard secrecy of information, (4) value of information to owners and competitors, (5) amount of effort and money expended in developing information, and (6) ease or difficulty with which information could be properly acquired or duplicated by other.

*Wysong Corp. v. M.I. Industries*, 412 F. Supp. 2d 612, 626 (E.D. Mich. 2005), quoting *Compuware Corp. v. Serena Software Int'l, Inc.*, 77 F. Supp. 2d 816, 820 (E.D. Mich. 1999).

"To be a trade secret, the information must, of necessity, be a secret." *Kubik, Inc. v. Hull*, 56 Mich. App. 335, 347. Trade secrets do not "encompass information which is readily ascertainable, i.e., capable of being acquired by competitors or the general public without undue

difficulty of hardship." *Id*. at 348.

"A plaintiff in a trade secrets case bears the burden of pleading and proving the specific nature of the trade secrets." *Wilson v. Continental Dev. Co.*, 112 F. Supp. 2d 648, 662 (W.D. Mich. 1999). "A party alleging trade secret misappropriation must particularize and identify the purported misappropriated trade secrets with specificity." *Compuware Corp. v. Int'l Business Machines*, 2003 WL 23212863, *6 (E.D. Mich. Dec. 19, 2003).

In the instant case, Donnelly argues that "Dura's new listing [of purported trade secrets] is, at best, an overview of six general categories of information that might contain trade secrets." [Def.'s Br., Doc. No. 200, p.4]. Donnelly therefore argues that Dura's trade secrets claims should be dismissed as follows:

> Because Dura has failed to state with the requisite specificity the trade secrets it claims Magna Donnelly misappropriated, Dura's claim for trade secret misappropriation should be dismissed. Alternatively, to the extent this Court considers the [three] examples listed in Dura's expert's report to be Dura's claimed trade secrets list, Dura's claim for trade secret misappropriation still fails because Dura cannot meet its burden of proof that (i) such alleged trade secrets are, in fact, trade secrets, and (ii) that Magna Donnelly misappropriated those trade secrets.

*Id*. at 6. The Court disagrees for the reasons that follow, and therefore **DENIES** Donnelly's motion [Doc. No. 200].

I. Dura's Transition Seams

Dura claims that Donnelly misappropriated trade secrets related to the transition seams on Donnelly's P356 and GMT900 power slider products sold to Ford and General Motors. Specifically, Dura's expert, Prof. Jeffrey L. Stein[2] ("Stein"), identifies the information Dura

---

[2] Professor Stein holds B.S., M.S., and Ph.D. degrees in mechanical engineering from the Massachusetts Institute of Technology, and is a full professor of mechanical engineering at the

purports to be a trade secret:

> Dura's testing program, that includes water leak testing, shows an approximately 2 percent failure rate at these backplate joints [of the window]. . . .Dura found a permanent and cost effective solution to this problem is to modify the design at the window assemblies so that the transition seams in the window encapsulated frame do not occur at the corner but rather at points further down on the vertical sides of the frame. . . . This information is a trade secret to Dura.

[Stein Report, Def.'s Ex. I, Doc. No. 200, pp.9-10].

Donnelly argues that Dura's transition seams are not a trade secret. "Under Michigan law, a trade secret cannot consist of information which is readily ascertainable, i.e., capable of being acquired by competitors or the general public without undue difficulty or hardship." [Def.'s Br., Doc. No. 200, p.13, quoting *Wysong*, 412 F. Supp. 2d at 627 (internal citations omitted)]. Specifically, Donnelly makes two arguments why these transition seams are not trade secrets: 1) Donnelly had "benchmarked" Dura's DR power slider window for the 2006 Dodge Ram; and 2) Donnelly had incorporated similar transition seams on its P356 and GMT900 projects before former Dura employees began working for Donnelly. The Court considers each of these arguments in turn.

First, Donnelly argues that "as a matter of ordinary engineering practice, companies, including Magna Donnelly, routinely 'benchmark' competitors products, so Magna Donnelly was aware how Dura's DR power slider window for the 2006 Dodge Ram was constructed and how it functioned." [Def.'s Br., Doc. No. 200, p.13, citing Declaration of Mike Hlust, Def.'s Ex. G, ¶23]. The Court finds this argument without merit. In fact, the DR power slider did not even

---

University of Michigan in Ann Arbor, Michigan. Professor Stein is also the Associate Director of the Automotive Research Center at the University of Michigan.

include Dura's purported trade secret of locating the transition seams of the encapsulated window assembly so that the seams are not co-located with the vehicle sheet metal welds. As one of Dura's engineers, Mr. Robert Cicala, explains in his Declaration:

> Dura's DR power slider window sold for the 2006 Dodge Ram pickup truck did not include Dura's trade secret of locating the transition seams of the encapsulated window assembly so that the seams are not co-located with the vehicle ditch welds.

[Cicala Decl., Pl's Ex. 1, Doc. No. 248, ¶10]. As such, Donnelly could not possibly have learned of Dura's transition seam trade secret through "benchmarking" Dura's 2006 DR power slider.

Second, Donnelly argues that it developed its transition seam design before key Dura employees left to work for Donnelly:

> The transition seams incorporated on the P356 power slider window and the GMT900 power slider window were developed on or before February 18, 2005 on an H-frame portion of the P356 power slider window as indicated by the date on the Magna Donnelly drawing of the H-frame for the P356 power slider window, which is before Denzil Abney [("Abney")] or Garey DeGroff [("DeGroff")] were employed by Magna Donnelly.

[Def.'s Br., Doc. No. 200, pp.13-14]. The Court also finds this argument to be without merit. Donnelly's offered drawing of the P356 [Def.'s Ex. J, Bates No. MD015582] only shows the condition of the P356 on February 5, 2008, the date of its last revision. Furthermore, while Abney and DeGroff were not employed by Donnelly as of February 18, 2005 - the date Donnelly alleges this drawing of the P356 was made - Mr. Paul Eichenberg, a former key employee in Dura's encapsulated window business, was so employed.

Though Eichenberg contends that he was not *involved in the design or development* of the transition seams on the P356 and the GMT900 slider windows [*See* Eichenberg Decl., Def.'s Ex. M, ¶5], Eichenberg does *not* state that he did not impart any of his prior knowledge regarding

7

Dura's transition seams to those who *were directly involved with the creation of those window assemblies*. As such, genuine issues of material fact remain regarding how Donnelly became aware of Dura's purported trade secrets regarding its transition seam placements.

For these reasons, summary judgment on Dura's purported transition seam trade secret is improper, as genuine issues of material fact remain regarding how Donnelly discovered Dura's purported trade secret. As such, Donnelly's motion with respect to Dura's transition seams is **DENIED**.

II. <u>Dura's Nonlinear Water Drainage Path</u>

Dura claims that Donnelly misappropriated trade secrets related to the water drain holes on Donnelly's P356 and GMT900 power slider products sold to Ford and General Motors. Specifically, Prof. Stein identifies the information Dura purports to be a trade secret:

> Dura disclosed through US patent Application 2007/0157522 A1, published July 12, 2007 a drain cavity molded into [the] bottom of the frame, having one side formed by the window glass, and providing a nonlinear path such that the water could drain via gravity gut would simultaneously reduce wind noise. . . . **Th[is was a] trade secret to Dura at least until the public disclosure of such information on July 12, 2007**. . . . It is also my opinion that the development of this information was not readily ascertainable by those involved in the industry of making power sliding window products. . . . **It is reasonable to conclude that Magna learned of this trade secret through former Dura employees**.

[Stein Report, Def.'s Ex. I, Doc. No. 200, pp.11-12 (emphasis added)].

Donnelly offers several arguments why Dura's nonlinear drainage paths are either not a trade secret, or not misappropriated by Donnelly. The Court finds each of these arguments to be without merit.

First, Donnelly argues that "Dura's own publicly available window includes a Nonlinear Water Drainage Path. This feature is included in at least Dura's DR power slider window sold

8

with the 2006 Dodge Ram pickup truck." [Def.'s Br., Doc. No. 200, p.16]. As Dura argues, however, their nonlinear drainage path trade secret is contingent upon using the window glass itself as part of the form for the drainage path, something the 2006 DR power slider does not include:

> The drainage cavity in Dura's DR power slider window for the 2006 Dodge Ram pickup did not have one side formed by the window glass. As such, the DR power slider window did not include Dura's trade secret of a non-linear water drainage path.

[Cicala Decl., Pl's Ex. 1, Doc. No. 248, ¶12]. As such, Donnelly could not possibly have learned of Dura's nonlinear water drainage path trade secret through "benchmarking" Dura's 2006 DR power slider.

Second, Donnelly argues that "[t]he Nonlinear Water Drainage Paths utilized on the P356 power slider window and the GMT900 power slider window were developed on or before May 19, 2005 as indicated by the AC revision date on the Magna Donnelly drawing with Bates No. MD015582." [Def.'s Br., Doc. No. 200, p.17]. Further, "Magna Donnelly developed a slider window for Nissan that included Nonlinear Water Drainage Paths on or before February 23, 2005 as indicated by the AV revision date on the Magna Donnelly drawing with Bates No. MD015580." *Id*. Finally, Donnelly argues that Abney's, DeGroff's, and Eichenberg's names appear nowhere on any drawings created by Donnelly which show similar nonlinear water drainage paths. *Id*.

The Court finds Donnelly's argument regarding its P356 to be without merit for the same reasons discussed above regarding its transition seams: the drawing does not establish that a non-linear water drainage path was present in the P356 design as of the original February 18, 2005

9

drawing date - only that it was present by the time the drawing was updated by February 5, 2008. Such is confirmed in the Declaration of Prof. Stein offered by Dura:

> . . . Donnelly's drawing of the P356 window (bearing production number MD015582) at best only shows the condition of the P356 design as of February 5, 2008, the date of the last revision. The drawing does not establish that a non-linear water drainage cavity was present in the P356 as of the original February 18, 2005 drawing date. ***In fact, notations on the drawing suggest that the non-linear water drainage path was not a part of the original design but was added later before the design was finalized in February 2008.***

[Stein Decl., Pl.'s Ex. 2, Doc. No. 248, ¶16 (emphasis added)]. Further, critical amendments to the drainage paths on the P356 were made on August 1, 2006 and September 14, 2006 - after Eichenberg, DeGroff, and Abney went to work for Donnelly. *Id*. at ¶¶17-18. Genuine issues of material fact remain regarding how Donnelly acquired its knowledge of Dura's nonlinear water drainage paths.

Furthermore, there is no indication that Dura's trade secret regarding nonlinear water drainage paths was even present in Donnelly's Nissan ZW window:

> [T]he Donnelly drawing [Bates No. MD015580] does not establish that Dura's trade secret was utilized in the Nissan ZW window. In particular, the Donnelly drawing does not establish that one side of the drain cavity in the Nissan window was formed by the window glass.

*Id*. at ¶19.

For these reasons, summary judgment on Dura's purported nonlinear water drainage paths trade secret is improper, as genuine issues of material fact remain regarding how Donnelly discovered Dura's purported trade secret. As such, Donnelly's motion with respect to Dura's nonlinear water drainage paths is **DENIED**.

III. Dura's Deflector

Dura claims that Donnelly misappropriated trade secrets related to the deflector on Donnelly's GMT900 power slider product sold to General Motors.  Specifically, Prof. Stein identifies the information Dura purports to be a trade secret:

> Dura Automotive also discloses through US Patent Application 2007/0157522 A1, published Jul 12, 2007 "an integrally molded deflector [("deflector")] extending about the opening and at least partially closing a gap formed between the slider panel and the fixed panel. . . ."  the deflector does not become distorted or crushed when the window is closed and squeak noise is avoided.  Further, the movement of the deflector towards the window helps to shield the ribs form [*sic*] high pressure water (e.g., a car wash) and prevents the seal from leaking.  The effectiveness of the deflector is substantially improved by having it move closed to the window in the closed position without increasing the closing force or the reliability of the seal. . . . ***This information was a trade secret to Dura at least until the public disclosure of such information in July 2007. . . . It is my opinion that it is more likely than not and reasonable to conclude that Magna misappropriated this information from Dura. . . .***

[Stein Report, Def.'s Ex. I, Doc. No. 200, pp.16-17 (emphasis added)].

Donnelly offers several arguments why Dura's deflectors are either not a trade secret, or not misappropriated by Donnelly.  First, Donnelly argues that it "developed this Deflector for Nissan on or before April 12, 2002 as indicated by the date on the Magna Donnelly drawing with Bates No. MD015581, which predates Magna Donnelly's employment of Paul Eichenberg, Denzil Abney and Gary DeGroff."  [Def.'s Br., Doc. No. 200, p.19].  Further, Donnelly again argues that Abney's, DeGroff's, and Eichenberg's names appear nowhere on any drawings created by Donnelly which show similar deflectors.  The Court finds each of these arguments to be without merit.

With respect to Donnelly's argument regarding its Nissan deflector, genuine issues of material fact remain regarding whether the April 12, 2002 drawing even depicts Donnelly's trade

11

secret deflector:

> The vertical seal with deflector, shown in the figure below [Bates No. MD003852] from Donnelly's motion papers, is the deflector that is used on Donnelly's GMT900 and is the same deflector that is Dura's trade secret. ***On the other hand, the Nissan deflector depicted below [Bates No. MD015581], which I understand that Donnelly has identified as being included on the Nissan ZW, is different***. . . . Rather than being a "taped on" seal, the Nissan deflector has a "Christmas tree" type base designed to be received in a channel of the vehicle window frame. This deflector has been known to suffer from reliability issues that Dura's taped on seal (with its different attachment methodology) was specifically designed to address.

[Stein Decl., Pl.'s Ex. 2, Doc. No. 248, ¶¶20-21 (emphasis added)]. As such, genuine issues of material fact remain regarding whether Donnelly's Nissan ZW window teaches Dura's purported transition seam trade secret.

Further, as discussed *supra*, the absence of Abney's, DeGroff's and Eichenberg's names from the relevant GMT900 drawings is not dispositive proof that these individuals did not share Dura's trade secrets with Donnelly - only that their names were not included for attribution.

For these reasons, summary judgment on Dura's purported deflector trade secret is improper, as genuine issues of material fact remain regarding how Donnelly discovered Dura's purported trade secret. As such, Donnelly's motion with respect to Dura's deflector is **DENIED**.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Donnelly's Motion for Summary

Judgment on Count 9 of Dura's Second Amended Complaint [Doc. No. 200].

    **IT IS SO ORDERED**.

        S/Sean F. Cox
        Sean F. Cox
        United States District Judge

Dated: September 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2009, by electronic and/or ordinary mail.

        S/Jennifer Hernandez
        Case Manager