**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DURA GLOBAL TECHNOLOGIES, INC., )
DURA OPERATING CORP. , )
)
Plaintiffs, ) Civil Action No. 2:07-cv-10945-SFC-MKM
)
v. )
) Hon. Judge Sean F. Cox
MAGNA DONNELLY CORPORATION, )
a/k/a DONNELLY CORPORATION )
)
Defendant. )

**OPINION AND ORDER DENYING MAGNA DONNELLY'S MOTION TO STRIKE DURA'S PROPOSED FINAL PRETRIAL ORDER AND GRANTING MAGNA DONNELLY'S REQUEST FOR ADDITIONAL DISCOVERY**

Before the Court is Magna Donnelly Corporation's ("Magna") Motion to Strike Dura's Proposed Final Pretrial Order. (Dkt. No. 511). For the reasons stated below, the Court denies the motion. However, pursuant to Magna's request, and as explained more fully below, the Court will grant the parties three additional months of limited discovery.

I. INTRODUCTION

As this case presently stands, this is essentially a trade secret and unfair competition case. In this motion, Magna seeks to strike what it alleges are new or amended claims and positions that appear for the first time in Dura's Proposed Final Pretrial Order. Particularly, Magna argues that Dura has added additional purported trade secrets to its list of trade secrets that were allegedly misappropriated by Magna. Magna also argues that Dura has submitted new increased damages calculations in a supplemental expert report after the deadline for discovery

and dispositive motions. Magna requests that the Court strike the supplemental expert report. Magna also argues that Dura's unfair competition claim should also be stricken.

Dura points out that its current Second Amended Complaint already clearly contains a count for trade secret misappropriation and points out that Dura is not seeking to add a totally new cause of action. To the contrary, Dura argues that it is seeking to add additional trade secrets to its list of trade secrets that Magna allegedly misappropriated based on newly obtained evidence. Dura argues that the alleged additional trade secrets arise from the same core facts – that Magna hired away Dura employees to obtain Dura's trade secrets.

For the reasons explained in this Opinion and Order, the Court will allow Dura to argue at trial the additional trade secrets identified in its Proposed Final Pretrial Order and its response brief. Dura has shown that it obtained new evidence of trade secret misappropriation through the documents produced by Magna near or after the discovery deadline and through discovery that took place in a related case in Oakland County, Michigan Circuit Court. Dura also timely sought to include the additional trade secrets in this case. Therefore, the Court finds that Dura was not dilatory or seeking to ambush Magna with the new trade secrets.

Magna states in its response brief that it needs additional discovery if the Court allows Dura to argue at trial that Magna misappropriated the additional trade secrets. In order to prevent any prejudice to Magna, the Court is granting Magna's request for additional discovery. **The Court will grant the parties three additional months for discovery**. The remaining dates in the Court's current scheduling order are hereby set aside and the dates in the "Conclusion" section of this Opinion shall take effect.

## II. FACTS

In 2007, Dura filed this lawsuit against Magna Donnelly alleging *inter alia* counts of trade secret misappropriation, unfair competition, and patent infringement. In the Complaint, Dura generally alleged that Magna improperly acquired Dura trade secrets by hiring away Dura employees and having those employees work in positions at Magna which would "inevitably lead[] to improper use of such trade secrets. . . ." (Am. Compl. At ¶ 57, Dkt. No. 7). Dura's "Amended Complaint" did not state what particular trade secrets were misappropriated and the allegations were based "upon information and belief." (Am. Compl., Dkt. 7.)

Shortly after this federal lawsuit was filed, Dura sought to obtain discovery from Magna relating to its counts of misappropriation of trade secrets and acts of unfair competition. Magna opposed the discovery and filed a motion for a protective order. Magna argued that Dura should first identify, with particularity, the alleged trade secrets that were at issue in the lawsuit before Dura could conduct discovery related to its count for trade secret misappropriation. (Dkt. No. 27 at p. 7). Magna was concerned that Dura might tailor its asserted alleged trade secrets to fit Magna's technology, and Magna wanted to prevent Dura's allegedly misappropriated trade secrets from being a "moving target," which in the Court's experience is a legitimate concern in trade secret litigation. (*Id*.)

On December 7, 2007, Magistrate Judge Majzoub granted Magna's motion for a protective order and ordered a temporary stay of discovery of "Defendant's trade secret information" until after Dura filed a particularized trade secret list. (Dkt. No. 54 at pgs. 9, 11). Magistrate Judge Majzoub determined that Dura had not specified the allegedly misappropriated trade secrets with "reasonable particularity required for relevant discovery to take place of [Magna's] trade secrets." (*Id*. at p. 9). Magistrate Judge Majzoub ordered Dura to file a list of the trade secrets allegedly misappropriated under seal before any discovery was to take place.

On December 20, 2007, Dura filed a Second Amended Complaint in which Dura expanded on the allegations in its Amended Complaint, but did not list with reasonable particularity discrete trade secrets that were allegedly misappropriated by Magna. (Dkt. No. 67). The Second Amended Complaint focuses on the fact that Magna hired away employees from Dura and used those employees in competing business areas against Dura. Based on the job duties of the former Dura employees at Magna, Dura alleged that Magna was using Dura's confidential trade secrets. Dura's Second Amended Complaint also included counts for patent infringement, unfair competition, and intentional interference with prospective economic advantage.

On January 24, 2008, Dura filed a first list of trade secrets as directed by Magistrate Judge Majzoub. (Dkt. No. 62).

On February 18, 2008, Magna filed a motion to dismiss Dura's count for misappropriation of trade secrets, arguing that Dura did not list its trade secrets with reasonable particularity in its first list of trade secrets. (Magna's Mot. to Dismiss, Dkt. No. 67). On May 14, 2008, Magistrate Judge Majzoub agreed and found Dura's "list does not describe their trade secrets with reasonable particularity." (Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss at p. 3, Dkt. No. 112). Magistrate Judge Majzoub explained:

> Rather than a list of trade secrets, Plaintiff's submission is better described as a brief identifying areas to which the their trade secrets relate and describing how Defendant misappropriated the trade secrets which are described in general terms, such as "business strategies and inside information," interspersed with more specific information which identifies particular trade secrets. Plaintiffs must create a list rather than a document in the style of a brief. The list should omit general references such as control plans, process plans, design reviews, drawings and work instructions and replace them with specific references to concrete documents. Plaintiffs argue in their Response brief that Defendant would have the Court order it to list virtually thousands of trade secrets. (Docket no. 83 at 8). If Plaintiffs are claiming

> the misappropriation of each of those thousands of trade secrets, such a list is required by the reasonable particularity standard, with the exception noted above regarding trade secrets which are compilations of secret and non-secret information for which the secret information need not be specifically identified with reasonable particularity. *See Sit-Up Ltd.*, 2008 WL 463884 at *11.

(*Id*. at p. 2-3). Although Magistrate Judge Majzoub found that Dura did not articulate the trade secrets taken with reasonable particularity, she refused to dismiss the count for misappropriation of trade secrets. Instead, Magistrate Majzoub gave Dura another chance to set forth with reasonable particularity the trade secrets that were allegedly misappropriated. (*Id*. at p. 3). Magistrate Judge Majzoub ordered Dura to serve an amended list of trade secrets on or before May 21, 2008. (*Id*. at p. 5). Magistrate Judge Majzoub also warned Dura "that sanctions may hereafter be awarded for failure to list their trade secrets with reasonable particularity." (*Id*. at p. 4).

On May 21, 2008, Dura filed a First Amended List of Trade Secrets, again attempting to list the misappropriated trade secrets with reasonable particularity, as instructed by Magistrate Judge Majzoub. (Dkt. No. 118).

Magna again believed that Dura failed to describe the misappropriated trade secrets with reasonable particularity. On May 23, 2008, Magna filed another motion to dismiss Plaintiff's Second Amended Complaint as a sanction for Dura's alleged failure to describe its trade secrets with reasonable particularity. (Dkt. No. 120).

Two business days before discovery closed, on May 27, 2008, Magna produced its first document production, which contained about 145,000 pages of documents. Then, after the close of discovery, Magna produced another 22,000 pages of documents. It appears the

documents produced were mostly related to the patent infringement counts. Obviously, it would take Dura some time to review the documents.

On June 2, 2008, Dura filed a motion for leave to file a "Second Amended List of Trade Secrets," which listed six alleged trade secrets. (Dkt. No. 136). Dura listed the following six trade secrets:

1. Defendant has misappropriated Dura's trade secret information related to Dura's confidential employee information.
2. Defendant's employees that Defendant hired away from Dura were substantively involved in the preparation and presentation of Dura's costing information and creation of "Lessons Learned" database for key upcoming rear backlight programs including at least Dura's efforts to secure the GMT900 project. At least some of these same employees had access to and participated in the costing of Magna Donnelly's bid along with the creation and/or revision of Magna Donnelly's "lessons learned" database during Magna Donnelly's efforts to secure the GMT900 project. This is equivalent to hiring away the opposing team's coach, offensive coordinator and defensive coordinator one week prior to the Super Bowl.
3. Defendant has misappropriated Dura's trade secret in the form of Confidential Customer Information.
4. At least the Defendant's GMT900 and P356 products contain Dura's trade secrets on how to prevent water leakage at the upper driver and passenger side corners of the encapsulated power side window by removing any joints or unevenness from the molded frame at this location.
5. At least the Defendant's GMT900 and P356 products contain Dura's trade secret of nonlinear molded drain cavity formed on one side by the window glass.
6. At least the Defendant's GMT900 product contains Dura's trade secret of providing a center sealing element including an efficient bending deflector design.

On July 11, 2008, Magistrate Judge Majzoub granted Dura's motion for leave to file its proposed Second Amended List of Trade Secrets, which was Dura's third attempt to state its purported trade secrets with reasonable particularity. (Dkt. No. 229). Magistrate Judge Majzoub then turned to the issue of whether Dura's Second Amended List of Trade Secrets

described the purported trade secrets with reasonable particularity. Magistrate Judge Majzoub noted that her previous instructions were that "[g]eneral references were to be omitted and replaced by specific references to concrete documents." (*Id.* at p. 3). However, Magistrate Judge Majzoub found that Dura's Second Amended List of Trade Secrets "continues to use vague, general language to describe trade secrets. . . ." Specifically, the Magistrate Judge Majzoub stated:

> Plaintiff's second amended list of trade secrets continues to use vague, general language to describe trade secrets such as "information related to Dura's confidential employee information" in the first trade secret; "Dura's costing information and creation of 'Lessons Learned' database for key upcoming rear back light programs" in the second trade secret; and "[c]onfidential customer [i]nformation" in the third trade secret. (Docket No. 136 at p. 3). Such vague and general descriptions fail to state with reasonable particularity the trade secrets at issue in this action.[1] Plaintiffs have violated this Court's prior Orders (Docket Nos. 54, 112) by failing to describe trade secrets 1-3 with reasonable particularity. Trade secrets 1-3 of Plaintiff's second amended list of trade secrets will be stricken pursuant to Rule 37(b)(2)(A). Plaintiff's listing and description of trade secrets four, five, and six are more specific. They will not be stricken. Plaintiffs have been afforded several opportunities to state the trade secrets at issue in this action with reasonable particularity. The time has come to provide Defendant with some assurance that the trade secrets listed are those that it is accused of misappropriating and prevent further prejudice that arises from Plaintiffs' failure to properly identify them. With that in mind, this Court will not look with favor upon a future attempt by Plaintiffs to amend this list of trade secrets.

[1] "Plaintiffs' statement in their brief that a more specific description of the trade secrets at issue and how they were misappropriated are contained in the attached expert report by Dr. Stein (Docket No. 136 at 4) fails to save Plaintiffs' defective listing. This Court ordered Plaintiffs to produce a list of trade secrets in which the trade secrets are stated with reasonable particularity – not a list containing vague and general descriptions along with an attached expert report written in brief style which, while discussing trade secrets, includes much information irrelevant to the issues raised by these motions." (*Id*. at p. 4).

(*Id*. at 4-5). Magistrate Judge Majzoub gave Dura until July 23, 2008 to file a revised Second Amended List of Trade Secrets containing only purported trade secrets 4-6 in Dura's Second Amended List of Trade Secrets.

On July 23, 2008, pursuant to Judge Majzoub's instructions, Dura filed its revised Second Amended List of Trade Secrets, which listed the following three trade secrets:

> 1. At least the Defendant's GMT900 and P356 products contain Dura's trade secrets on how to prevent water leakage at the upper driver and passenger side corners of the encapsulated power slide window by removing any joints or unevenness from the molded frame at this location;
>
> 2. At least the Defendant's GMT900 and P356 products contain Dura's trade secrets of a nonlinear molded drain cavity formed on one side by the window class; and
>
> 3. At least the Defendant's GMT900 product contains Dura's trade secrets of providing a center sealing element including an efficient bending deflector design.

On July 6, 2008, Dura filed a motion to amend its complaint and its list of trade secrets. Dura also sought sanctions based on the fact that the documents produced by Magna shortly before and after the close of disclose of discovery show that Magna misappropriated various additional Dura trade secrets. Dura also requested other relief, including sanctions and a judgment that trade secret misappropriation had occurred. (Dkt. No. 198). Dura's motion sets forth examples of the ways in which Magna has allegedly misappropriated Dura's trade secrets.

On August 18, 2008, Magistrate Judge Majzoub denied Dura's motion to amend its complaint and list of trade secrets and other requested relief. (Dkt. No. 289). Although denying the motion, Magistrate Judge Majzoub stated that whether or not the documents produced by Magna established trade secret misappropriation "is a question for summary

judgment motion or for the jury." Magistrate Judge Majzoub noted that Dura had not shown "at this point that this information conclusively shows wrongdoing by Defendant with regard to Plaintiffs' trade secrets. And, as discussed above, if Plaintiffs have been prejudiced by the late production of this allegedly damning evidence, such prejudice results from Plaintiffs' delay in properly listing their trade secrets. Therefore, the requests by Plaintiffs for leave to amend their complaint and trade secret lists, to modify the protective order, to strike Defendant's defenses, and to issue a preliminary injunction will be denied." (*Id*. at 4).

On or about September 2, 2008, Dura promptly filed a motion for reconsideration and clarification of Magistrate Judge Majzoub's August 18, 2011 Opinion and Order (Dkt. No. 295), which refused Dura's request to amend its complaint but which also said that the determination of whether trade secret misappropriation had occurred would need to be decided at summary judgment or at trial. Dura requested clarification as to whether or not it would be allowed to present evidence at trial of trade secret misappropriation outside the three trade secrets listed in Dura's Second Amended List of Trade Secrets, particularly since it identified other instances of trade secret misappropriation in its motion but Magistrate Judge Majzoub denied Dura's request to amend its complaint or its list of trade secrets. As for examples of Magna's trade secret misappropriation, Dura identified that Magna had allegedly misappropriated Dura's primer and primer processing techniques, as well as Dura's confidential "bud sheets" for its vehicle slider window programs.

On October 10, 2008, Magistrate Judge Majzoub also denied Dura's motion for clarification without much discussion. (Dkt. No. 322). Magistrate Judge Majzoub did not address whether or not Dura would be allowed to argue at trial that Magna had misappropriated the additional trade secrets that were uncovered in Magna's document production, and the Opinion is unclear

on this point. Dura appealed to this Court by filing objections to Magistrate Judge Majzoub's decision. (Dkt. No. 323). This Court affirmed Magistrate Judge Majzoub's decision (Opinion at p. 2, Dkt. No. 436) but did not address whether or not Dura will be limited to particular trade secrets at trial.

Discovery in this case regarding Dura's trade secret claims was limited. By the time Dura set forth a list of trade secrets with reasonable particularity and obtained documents from Magna, the discovery deadline had passed. (Mot. Hearing Tr. at pgs. 11-12 and 8, Ex. C to Mot. to Strike, Dkt. No. 510).

On November 13, 2008, Dura filed a lawsuit in Oakland County, Michigan Circuit Court against the three former Dura employees (Denzil Abney, Gary Degroff, and Timothy Cleveland) who were hired away by Magna for *inter alia* trade secret misappropriation and breach of contract. As the lawsuits presently stand, both this federal case and the state court case involve essentially the same alleged acts of misappropriation of trade secrets. The only difference between this case, as it currently stands, and the Oakland County case is that this case is against Magna and the Oakland County case is seeking damages against the former Dura employees, individually, who allegedly passed along Dura's trade secrets to Magna. (Mot. Hearing Tr. at pgs. 8 and 14, Ex. C to Mot. to Strike, Dkt. No. 510). The Court takes judicial notice that the Protective Order in the Oakland County case cross-designates documents produced in that case for use in this federal case. Specifically, the Protective Order states:

> Each document or thing provided to the receiving party, or any portion thereof, including deposition testimony, is a document or thing cross designated between U.S. District Court of Michigan Case No. 2:07-cv-10945-SFC-MKM, Dura Global Technologies, Inc. et al. v. Donnelly Corporation ("Federal Case"), and the present action, and shall maintain an applicable designation under the Protective Order. Documents and things from either the

> present action or the Federal Case labeled with a designation of "Confidential" shall be subject to the provisions of the Protective Order of the cross-designated action with a designation legend of "CONFIDENTIAL." Documents and things from either the present action or the Federal Case without a label of confidentiality shall be treated as non-confidential documents and things in the cross-designated action.

It appears that Dura filed the Oakland County Circuit Court case to obtain discovery that it was not allowed to obtain in this case due to Magistrate Judge Majzoub not allowing discovery until Dura could describe the specific trade secrets that Magna had allegedly misappropriated with "reasonable particularity." (Mot. Hearing Tr. at pgs. 11-12 and 8, Ex. C to Mot. to Strike, Dkt. No. 510). Because Dura had essentially run out of time for discovery in this federal case, it filed the State court case to obtain the discovery that it needed. (*Id.*) The Court understands that the parties have had substantial discovery in the Oakland County case that is relevant to this case.

On November 5, 2009, Dura submitted its Proposed Final Pretrial Order (Dkt. No. 356; *see also* Ex. A to Magna's Mot. to Strike, Dkt. No. 510). Magna then filed the present motion to strike Dura's Proposed Final Pretrial Order, to strike new damages calculations in a late filed supplemental expert report from Dura's damages expert Richard Troxel, and to strike Dura's unfair competition and intentional interference claims.

## III. ANALYSIS

### A. MAGNA'S MOTION TO STRIKE ADDITIONAL PURPORTED TRADE SECRETS CONTAINED IN DURA'S PROPOSED FINAL PRETRIAL REPORT WHICH ARE NOT CONTAINED IN DURA'S SECOND AMENDED LIST OF TRADE SECRETS

In this motion, Magna Donnelly seeks to strike what it alleges are new or amended claims and positions that appear for the first time in Dura's Proposed Final Pretrial Order. Specifically, Magna argues that Dura has added additional trade secrets to its list of trade secrets that were

allegedly misappropriated by Magna. Magna correctly points out that Magistrate Judge Majzoub required Dura to list with reasonable particularity the trade secrets that Magna allegedly misappropriated and in response, Dura was only able to list three specific trade secrets before any discovery took place in this case.

In its response brief, Dura argues that it should be allowed to expand the purported trade secrets at issue in the case because it obtained new evidence at or after the close of discovery showing that Magna misappropriated additional trade secrets. Specifically, Dura argues that near and after the discovery deadline, Magna produced for the first time documents in response to Dura's discovery requests. According to Dura, the documents produced by Magna contain evidence, including internal Magna email correspondence, showing that Magna misappropriated additional trade secrets that were not listed in Dura's Second Amended List of Trade Secrets. Dura also argues that the evidence shows that Magna engaged in unfair competition by hiring away its employees to obtain Dura trade secrets, by trying to put Dura out of business, and engaging in other improper acts. Dura says the document production by Magna is the first time that Dura was able to able to obtain this new evidence and this evidence was not available at the time it filed its Second Amended Complaint or its Second Amended List of Trade Secrets. Dura was also able to obtain additional evidence concerning its trade secret misappropriation count from a related case in Oakland County, Michigan Circuit Court. Dura argues that it was unable to list these additional trade secrets earlier.

In its response brief and in its proposed Final Pretrial Order, Dura sets forth the specific trade secrets that it desires to argue at trial:

(1) Vertical Seal Deflector
(2) The Bud Sheet/Financial Calculator
(3) The Inside Information on Dura's GMT900 and DS Designs

(4) Dura Priming Technology
(5) Serpentine Drain Path
(6) Transition Seams
(7) Dura's Window Film Coating Process
(8) Dura's Specifications and Pricing from Suppliers.

(Resp. Br. at p. 19-20; *see also* Trade Secrets in Plaintiffs' 11/4/2009 Proposed Final Pretrial Order, Ex. G to Mot. to Strike, Dkt. No. 510).

In its response brief, Dura sets forth some specific examples of the new evidence of trade secret misappropriation that it obtained from Magna's document production. Dura points to one instance of former Dura employee, (then a Magna employee) Gary DeGroff, asking another former Dura employee (then a Magna employee) to obtain allegedly confidentially Dura trade secrets via an email:

> Tim,
>
> I need you to do some snooping. Can you get with your source at Dura and find what they are using for the brite trim and what are their processing parameters. I [k]now they were using the Lord Primer. I think it is Chemlok 489/456 and were running it through the oven. I know we ambient cured as well. See what you can find out. We are looking to do this on a couple of programs.

(Ex. 12 to Dura's Resp. Br.) In response to Mr. DeGroff's request, the former Dura employee allegedly provided the information and stated: "They run it through an oven to cure. The cure without an oven is supposed to be an hour. That is the correct primer by the way." (*Id.*) Dura also points to examples of other new evidence such as, for example, a former Dura employee used Dura's financial calculator and quoting system while being employed at Magna (called a "Bud Sheet").

The Supreme Court and the Sixth Circuit have consistently favored allowing parties to amend their pleadings unless there is an apparent or declared reason such as undue delay, bad

faith, repeated failure to cure deficiencies previously allowed, undue prejudice to the opposing party, or futility of the amendment. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15; *Leary v. Daeschner*, 349 F.3d 888, 905-906, 909 (6th Cir. 2003) (establishing a "good cause" standard for amending pleadings after the deadline in the scheduling order passes). This jurisprudence embodies the principle that cases should be decided on the merits rather than technicalities of the pleadings. *See, e.g.*, *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). However, this Court will normally not allow a party to ambush the opposing party with new claims in the pretrial order. Local Rule 16.1 states: "The pretrial order shall not be a vehicle for adding claims or defenses." Discovery contentions and positions are also to be amended in a timely manner. A party will generally be allowed to amend its contentions if the amendment is made "in a timely manner." For example, Rule 26(e)(1) of the Federal Rules of Civil Procedure states:

> **(e) Supplementing Disclosures and Responses.**
>
> **(1)** ***In General.*** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> **(B)** as ordered by the court.

Before obtaining discovery, Dura did not know of all the alleged acts of trade secret misappropriation. The document production in this case, along with the discovery that took place in the Oakland County Circuit Court case, has provided Dura with additional evidence of

alleged acts of trade secret misappropriation. Dura was not dilatory in trying to get these new trade secrets into this case. Rather, soon after discovering the additional evidence, Dura sought to make the additional alleged trade secrets part of this case by filing a motion to Magistrate Judge Majzoub. (Mot. for Appropriate Relief, Dkt. No. 198). The Court finds there is good cause for allowing Dura to argue the additional trade secrets at trial.

This is not a case where the Plaintiff is seeking to add new counts for the first time in its final pretrial order that could have been added earlier. Rather, Dura's Second Amended Complaint already contains a count for trade secret misappropriation in which Dura alleged that Magna hired former Dura employees and used the former employees to obtain Dura's trade secrets. Dura learned that Magna extracted additional purported Dura trade secrets from the former Dura employees to support its counts through the document production and other discovery that took place near and after the discovery deadline, and through the discovery that took place in the Oakland County Circuit Court case. Moreover, after learning of the additional alleged acts of trade secret misappropriation, Dura timely brought these alleged trade secrets to the Court's and Magna's attention in a Motion for Appropriate Relief for Document Wrongfully Withheld (Dk. No. 198), which was really a motion to compel, a motion for sanctions for discovery abuses, and a motion to amend the complaint and its trade secret list. Although Magistrate Judge Majzoub denied the motion, she did state that "Ultimately, whether these documents show misappropriation of Plantiffs' trade secrets is a question for a summary judgment motion for the jury." (Opinion at p. 4, Dkt. No. 289.) Thus, Magistrate Judge Majzoub contemplated that Dura would not be precluded from arguing these trade secrets to a jury.

Magna requests it be given additional discovery if the Court allows Dura to argue these additional trade secrets at trial. (Magna Br. at p. 12, Dkt. No. 510). Dura states that it is ready

for trial. In addition to the discovery in this case, the Court understands that the parties' attorneys have taken numerous depositions and obtained thousands of pages of documents in discovery in this case and in the Oakland County Circuit Court case.[2] The Court notes that all documents produced in the Oakland County Circuit Court case have been cross-designated for use in this case.[3] However, in order to prevent any possible prejudice to Magna, the Court will grant Magna's request for additional discovery. The Court finds that additional discovery is warranted due to the limited discovery that took place as part of this federal case. By the time that Dura obtained Magna's document production, the discovery period was essentially over. Both Magna and Dura may take new discovery on matters related to the added trade secrets. The discovery shall be limited to the trade secrets fairly identified in Dura's Proposed Final Pretrial Order, issues related closely thereto, and the unfair competition claim. Specifically, the Court understands that the following trade secrets are the trade secrets at issue.

---

[2] Although Magna is not a party to the Oakland County Circuit Court case, the Court understands that Magna's attorneys took most of the depositions and other discovery that took place in the Oakland County Circuit Court case. Although the former Dura employees in the Oakland County case have their own counsel, Magna's attorneys described themselves as taking the "laboring oar with regard to taking discovery" and stated they will be trying the case. (Mot. Hearing Tr. at pgs. 5-6, Ex. 20 to Dura's Resp. Br.). Magna obviously recognizes that its interests align with the defendants in the Oakland County case and that there is substantial overlap between the issues in the Oakland County case and this federal case.

[3] The Court takes judicial notice that the Protective Order in the Oakland County Circuit Court case states: "Each document or thing provided to the receiving party, or any portion thereof, including deposition testimony, is a document or thing cross designated between U.S. District Court of Michigan Case No. 2:07-cv-10945-SFC-MKM, Dura Global Technologies, Inc. et al. v. Donnelly Corporation ("Federal Case"), and the present action, and shall maintain an applicable designation under the Protective Order. Documents and things from either the present action or the Federal Case labeled with a designation of "Confidential" shall be subject to the provisions of the Protective Order of the cross-designated action with a designation legend of "CONFIDENTIAL." Documents and things from either the present action or the Federal Case without a label of confidentiality shall be treated as non-confidential documents and things in the cross-designated action."

(1) Vertical Seal Deflector
(2) The Bud Sheet/Financial Calculator
(3) The Inside Information on Dura's GMT900 and DS Designs
(4) Dura Priming Technology
(5) Serpentine Drain Path
(6) Transition Seams
(7) Dura's Window Film Coating Process
(8) Dura's Specifications and Pricing from Suppliers.

The parties shall have until January 10, 2012 to complete discovery. The parties shall file a new final pretrial report on January 24, 2012. The Court will schedule a trial soon thereafter.

A. MAGNA'S ARGUMENTS AS TO DURA'S UNFAIR COMPETITION AND INTENTIONAL INTERFERENCE CLAIMS

In its motion, Magna argues that Dura should not be allowed to use its unfair competition count as a back door for getting the additional purported trade secrets into the case that should otherwise be precluded based on the arguments that Magna made in the previous section. Magna's argument appears to be based on the assumption that the Court would not allow the new purported trade secrets into the case. Since the Court is allowing Dura to argue the additional alleged trade secrets uncovered in Magna's document production and discovery in the Oakland County case at trial, it appears that this argument is now moot.

Magna also argues that Dura's unfair competition claim is preempted by the Michigan Uniform Trade Secrets Act. The Court notes that it has already decided a motion for summary judgment on this issue. (Dkt. No. 345). Moreover, consistent with this Court's previous decision, Dura claims it will not make arguments at trial that are preempted. Magna can bring such preemption issues to the Court's attention at the time of trial. The Court also expects that the parties will propose appropriate jury instructions that address any problems with double recovery for the same damages.

B. DURA'S AMENDED DAMAGES CALCULATIONS IN RICHARD TROXEL'S EXPERT REPORT

According to Magna, on December 8, 2008, after discovery had closed and summary judgment motions had been filed, Dura's damages expert witness, Richard Troxel, issued what appeared to be his final opinions to support Dura's alleged damages. However, on the verge of the Court's previous final pretrial conference, on November 9, 2009, Dura submitted a supplemental expert report for Mr. Troxel. According to Magna, this expert report "represented a significant increase over Dura's prior damages claims, even though no additional discovery took place that would explain Troxel's newest report." (Resp. Br. at p. 18.)

In its response brief, Dura apparently does not dispute that it submitted the updated expert report on the eve of the previously scheduled trial date. Instead, Dura relies on Rule 26(e) in arguing that it had the right to supplement its expert report at that time. The most recent version of Rule 26(e)(2) states:

> **(2)** ***Expert Witness.*** For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

If the Court was not already granting additional discovery in this case, the Court would be inclined to grant Magna's motion to strike the supplemental report. The Court does not approve of a party filing a supplemental expert report that significantly changes the party's position on the eve of trial. However, because the Court is granting additional discovery, the Court will allow Dura to supplement its expert report. Magna may serve a supplemental expert report from its damages expert to address Dura's new positions. To the extent that Magna needs to depose Mr. Troxel on these new positions, the Court will grant Magna leave to do so.

**V. CONCLUSION**

For the reasons stated above, the Court denies Magna's motion. The parties shall have until **January 10, 2012**, to complete discovery. The parties shall submit their final pretrial order to the Court by **January 24, 2012.** The Court will hold a status conference on **January 31, 2012 at 3:00 p.m.** to schedule a trial date.

IT IS SO ORDERED

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 29, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2011, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager